**Manuel CARDONA MARTINEZ and
Carmen Marquez Parrilla,
Plaintiffs**

v.

**Angel D. RODRIGUEZ QUIÑONES,
Laudelino Rivera, Olga Rodriguez Vi-
era, ADA Guevara, Migdalia Molina,
and Ramon Ayala Santiago, Defen-
dants**

No. CIV.02–1997(JP).

United States District Court,
D. Puerto Rico.

Feb. 13, 2004.

Jesús M. Hernández Sánchez, Esq., Fredeswin Pérez–Caballero, Esq., San Juan, PR, for Plaintiffs.

Gary H. Montilla–Brogan, Esq., Vanessa García–Porrata, Esq., Quiñones & Sánchez, PSC, San Juan, PR, for Defendants.

### OPINION AND ORDER

PIERAS, Senior District Judge.

## I. INTRODUCTION

On Thursday, January 29, 2004, the Court commenced the jury trial in the instant case. Plaintiffs Carmen Márquez Parrilla and Manuel Cardona Martinez, both affiliated with the New Progressive Party ("NPP"), bring the instant action alleging political discrimination in violation of their rights under the First Amendment of the United States Constitution. Defendants are six current and former employees of the Regulations and Permits Administration ("ARPE"), Angel Rodríguez, former Administrator of ARPE, Laudelino Rivera, Administrator of ARPE, Olga Rodríguez, Administrative Assistant, Ada Guevara, Human Resources Manager, Migdalia Molina, former Internal Comptroller of ARPE, and Engineer Ramón Ayala, head of the ARPE services center in Santurce. Defendants are affiliated with the Popular Democratic Party ("PDP"). They are sued in their personal capacities.

Plaintiff Carmen Márquez Parrilla alleges that, after the change of administration, Defendants lowered her salary and stripped her of the functions of her position, based on her political affiliation. She also alleges that these actions were taken in retaliation for her decision to speak about the agency during a radio program. Defendants allege that they took the above personnel actions after discovering that Márquez had been illegally appointed to her position and her salary had been illegally increased. Thus, they state that they took the personnel actions at issue to correct these illegalities and return her to her prior legal career position and that the personnel actions were not motivated by political animus.

Plaintiff Manuel Cardona Martínez alleges that Defendants demoted him to an inferior position, lowered his salary, and transferred him from Aguadilla to San Juan due to his political affiliation. He also states that he suffered a constructive discharge when the harassment he experienced forced him to quit his job. Defendants allege that he was given an illegal raise and promotion by the past administration. Thus, they state that they reinstated him to his prior legal career post and salary in accordance with the law.

After the conclusion of Plaintiffs' case in chief on February 12, 2004, Defendants moved for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure, stating that Plaintiffs have failed to present any evidence indicating that the personnel actions taken were motivated by political animus.

## II. STANDARD FOR A RULE 50 JUDGMENT AS A MATTER OF LAW

In deciding a motion for judgment as a matter of law pursuant to Rule 50, a district court must examine the evidence and draw any inferences in the light most favorable to the nonmoving party. *See Mangla v. Brown University,* 135 F.3d 80 (1st Cir.1998). In addition, the Court may not "consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence." *Katz v. City Metal Co., Inc.,* 87 F.3d 26, 28 (1st Cir.1996) (*quoting Richmond Steel, Inc. v. Puerto Rican American Ins. Co.,* 954 F.2d 19, 22 (1st Cir.1992)). For a court to submit an issue to the jury, a plaintiff must "present 'more than a mere scintilla' of evidence and may not rely on conjecture of speculation." *Id.* Ultimately, to grant a Rule 50 motion, the Court must find that, as a matter of law, the record would only permit a reasonable jury to reach one conclusion as to the disputed issue. *See id.; Mangla,* 135 F.3d at 82 (judgment as a matter of law may be granted only if the evidence "is such that reasonable minds could not differ as to the outcome.")

## III. ANALYSIS

The Court finds that, in the instant case, a reasonable jury could not conclude that Plaintiffs have met their burden of establishing a cause of action for political discrimination in violation of the First Amendment of the United States Constitution pursuant to 42 U.S.C. Section 1983.

In order to sustain their burden to establish a cause of action for political discrimination, Plaintiffs must show that their political affiliation was a substantial or motivating factor in Defendants' decision to take the personnel actions at issue. *See Acevedo–Diaz v. Aponte,* 1 F.3d 62, 66 (1st Cir.1993).

The Court will address each Plaintiff's case for political discrimination in turn.

### A. Plaintiff Carmen Márquez

#### 1. *Political Discrimination*

The Court will begin with a summary of Plaintiff's personnel history, taken from the uncontested facts agreed to by the parties and filed with the Court as "Joint Exhibit I."

1. On May 16, 1994, Plaintiff Márquez was transferred from ARPE to the Housing Department to a trust position of "Executive I", with a two-step salary promotion that brought her salary up to $2,052.00 per month.

2. On January 16, 1995, Plaintiff Márquez was transferred back to ARPE to a trust position as "Special Assistant I" with a salary of $2,279.00 per month.

3. On August 1, 1996, ARPE reclassified Plaintiff Márquez's position and raised her salary to $2,457.00 per month.

4. On September 1, 1996, Plaintiff Márquez was reinstated to a career position as "Administrative Official III" at ARPE, then, at the same time, promoted to the position of "Administrative Official V", with a salary of $2,175.00 per month. Note for the analysis to follow that this is Plaintiff Márquez's last relevant career position.

5. On March 1, 1997, Plaintiff Márquez was appointed to the trust position of "Auxiliary Administrator" with a salary of $3,257.00.

6. On February 1, 1998, Plaintiff Márquez received a promotion and her salary was increased to $3,537.00.

7. In October 1998, ARPE revised the salaries for trust positions and Plaintiff Márquez's salary was raised to $3,856.00.

8. On April 1, 2000, ARPE implemented a "classification and retribution plan" and increased Plaintiff Márquez's salary to $5,256.00.

9. On August 14, 2000, Plaintiff Márquez was reinstated to a career position of "Representative of Internal Resources III" with a salary of $2,513.00, then, the very next day, she was appointed to the career position of "Manager of Services and Process" and her salary was increased to $4,251.00.

10. The party opposing Plaintiff's party, the PDP, won the 2000 elections and the new administration took control in January of 2001 [this fact was added by the Court].

11. On January 30, 2002, Plaintiff Márquez was reinstated to the position of "Internal Service Representative III" with a salary of $2,513.00. The new PDP administration performed this change.

■ In a political discrimination case, a plaintiff bears the burden of producing sufficient direct or circumstantial evidence from which a jury could reasonably infer that the plaintiff's political affiliation was a substantial or motivating factor behind his or her dismissal. *See Acevedo–Diaz v. Aponte*, 1 F.3d 62, 66 (1st Cir.1993). The Court finds that no reasonable jury could conclude that Plaintiff Márquez has sustained a case for political discrimination. From the facts agreed to by the parties, it is clear that Plaintiff Márquez was given repeated salary raises and increasing responsibility in her career positions as a protection against a possible change in administration. Her work history is a series of salary increases and "reclassifications". Upon cross examination, Plaintiff Márquez testified that she managed to move from her trust position to a career position before the 1996 elections because she wanted to protect her job from her party's potential loss in the upcoming elections. The

same movement occurred before the 2000 elections, with the difference that, in 2000, her party actually did lose, and so began this case. Plaintiff Márquez received increases in salary and responsibility because she was practically the representative of the NPP at ARPE. The prior NPP administration placed her in "career positions" that had the salary and responsibility level that is typical of trust positions. As the First Circuit Court of Appeals has previously noted, when determining whether a position is a trust position or a career position, the formal classification of a position as a career position is not as important as a functional analysis of the duties and characteristics of the position. *See Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236 (1st Cir.1986) *citing Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). Relative pay is one of the indicia that locate a job along the spectrum between a trust and career position. *See id.* at 242. Therefore, when Plaintiff Márquez was returned to her last legal career appointment, she suffered what she felt to be a demotion, because her salary and responsibilities were greatly reduced from those of her "quasi trust" position. However, this was Defendants' attempt to correct previous illegal personnel transactions and return Plaintiff Márquez to her prior career position in accordance with the law. There is no taint of political animus in Defendants' actions. Plaintiff Márquez was properly returned to her last legally effected career position of Internal Service Representative III with a salary of $2,513.00.

■ Plaintiff Márquez's allegations of political discrimination are insufficient to maintain a cause of action for political discrimination. Plaintiff Márquez testified that she is an active member of the NPP and Defendants testified that they were aware of her political affiliation. Plaintiff Márquez testified that people in her office,

none of whom are defendants in this case, and who are not alleged to have been involved in the employment actions taken in this case, made comments to the effect that NPPs would have to leave. The Court finds that these comments are insufficient to sustain a case for political discrimination because Plaintiff Márquez has not shown sufficient evidence that there is a connection between the comments made and the actions taken against her. She also alleges that her duties and responsibilities were taken away. However, as the court has noted, this was to be expected after her return to her last legal career post after a series of trust positions, and career positions that were effectively trust positions. Plaintiff Márquez has failed to meet her burden to present evidence that would lead a reasonable jury to believe that the actions taken against her were motivated by her political affiliation.

■ It is true that firing an illegally appointed employee based on his political affiliation is a violation of the First Amendment, even though the employee was appointed illegally. *See Acevedo–Diaz v. Aponte*, 1 F.3d 62, 68 (1st Cir.1993). A new administration cannot use the nullity of appointments as a pretext for political discrimination, because the issue remains whether the plaintiffs proved by a preponderance of the evidence that political affiliation was a substantial or motivating factor behind the personnel actions at issue. *See id.* However, this is not the case here. Plaintiff Márquez simply has not met her burden to show that the employment actions at issue were motivated by political discrimination. Defendants put Plaintiff Márquez back in the right place, where she belonged.

### 2. *Retaliatory Action due to Free Expression*

In January of 2003, Engineer Nelson Irizarry, at the time the administrator of ARPE, made statements that appeared in the newspaper to the effect that the employees of ARPE lacked the necessary experience and education for their positions. In May of 2003, Plaintiff Márquez called into a radio show where these comments were being discussed and defended the ARPE employees. Defendants discovered that Plaintiff Márquez had called into the show during work hours and issued a letter of reprimand on May 12, 2003, noting that she had violated workplace policy, and the letter was placed in her personnel file.

■ A government employee does not lose his First Amendment right to comment on matters of public concern by virtue of his employment with the government. *See Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). When analyzing an employee's claim that his governmental employer retaliated against him for speaking out, the court's task is to seek "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The Court must first determine whether the speech at issue involves "matters of public concern." Then, the Court must "balance the strength of plaintiffs' and the public's First Amendment interests against the strength of the countervailing governmental interest in promoting efficient performance of the public service the government agency or entity must provide through" its employees. *See Mullin v. Town of Fairhaven*, 284 F.3d 31, 37 (1st Cir.2002). This analysis is referred to as the "Pickering balancing test". If the Court determines that the balance favors the employee's First Amendment rights over the interests of

the government agency, the employee must next show that the "protected expression was a substantial or motivating factor" in the adverse employment decision. *Mullin,* 284 F.3d at 38.

The Court finds that it is not necessary to enter into the full *Pickering* balancing test because there was no link between the reprimand of Plaintiff Márquez for speaking out and the employment actions taken by Defendants. Plaintiff Márquez has not provided any evidence that her speech was a substantial or motivating factor in Defendants' employment actions. In fact, the adverse employment actions at issue in this case, specifically, the nullification of Plaintiff Márquez's appointment and her reinstatement to a position with a lower salary and less responsibility, occurred in January and February of 2003, long before she called the radio program and received a letter of reprimand in May of 2003. The parties agree that, according to ARPE regulations, a written admonition is not a disciplinary measure. The Plaintiff Márquez has not brought evidence of any significant adverse employment actions taken by Defendants after she spoke out on the radio program.

### B. Plaintiff Manuel Cardona

In this case, Plaintiff Cardona has a sole cause of action for political discrimination under the First Amendment. The Court will begin with a summary of Plaintiff's personnel history taken the uncontested facts agreed to be the parties and entered into evidence as "Joint Exhibit I."

1. On March 1, 1995, Plaintiff Cardona began to work in the transitory position of "Statistician I" at ARPE with a salary of $691.00 per month.

2. On December 16, 1995, Plaintiff Cardona was transferred to the Planning Board to a career position as "Analyst of Planning II" with a salary of $1,203.00 per month.

3. On February 16, 1997, Plaintiff Cardona was transferred back to ARPE in the career position of "Statistician II" with a salary of $1,432.00 per month.

4. On September 21, 1999, Plaintiff Cardona went from ARPE to the Housing Department to occupy the trust position of "Special Assistant II" with a salary of $3,541.00 per month. According to Plaintiff Cardona's testimony, his friend, Carlos González, Administrator of the Housing Department, requested this transfer and assigned him this salary.

5. In November 1999, Plaintiff Cardona received a salary increase to $4,263.00 per month for productivity.

6. On January 16, 2000, Plaintiff Cardona was appointed to a trust position as "Auxiliary Secretary at the Office of Human Resources and Auxiliary Services" with a salary of $5002.00 per month.

7. In July 2000, Plaintiff Cardona was reinstated to the career position of "Administrative Official III" with a salary of $1,551.00. The next day, he was promoted to the position of "Administrative Director II" with a salary of $3,891.00. Two weeks later, he was promoted to the position of "Administrative Facilitator II" in Aguadilla with a salary of $4,024.00.

8. On January 18, 2002, Plaintiff Cardona was reassigned to the position of "Statistician" at ARPE with a salary of $1,706.00 per month. This personnel action was performed by the new PDP administration.

In a political discrimination case, a plaintiff bears the burden of producing sufficient direct or circumstantial evidence from which a jury could reasonably infer that the plaintiff's political affiliation was a

substantial or motivating factor behind his or her dismissal. *See Acevedo–Diaz v. Aponte,* 1 F.3d 62, 66 (1st Cir.1993).

Plaintiff Cardona testified that he is an active member of the NPP and that Defendants knew his political affiliation. In fact, he testified that he was a highly active member of the party and was friends with Carlos González, the Administrator of the Housing Department, upon whose instructions he was transferred to the Housing Department. He testified that, after the change in administration in January 2001, PDP employees made statements to the effect that "the honeymoon is over" and that the PDP employees would be leaving their positions. Plaintiff Cardona identified one employee who made such a comment. This employee is not a Defendant nor is there any evidence that he was connected to the employment actions taken by Defendants pertaining to Plaintiff Cardona.

Between April and May of 2001, Plaintiff Cardona testified that he received instructions that he would no longer be part of the Activities Committee for the area of Aguadilla, of which he had previously been a member. He was told by Director José Martínez that he must understand why they would not want him to come to the meeting, noting that Plaintiff Cardona had been a member of the previous administration's group of trust employees.

He testified that his prior functions in his position at ARPE in Aguadilla were assigned to Teresita Ruiz, who was affiliated with the PDP. He testified that all the personnel that he used to supervise in Aguadilla are now under her supervision.

Plaintiff testified that his parking space at the ARPE office in Aguadilla was taken away in March 2001. In addition, he testified that he lost his prior function of being in charge of distributing the payroll and keeping payroll records. He testified that these functions were assigned to a member of the PDP. He testified that he lost his prior functions of investigating cases of corruption. He testified that he was moved from his office to an open desk in the middle of the secretary pool and that Eveyln Lasalle, a member of the PDP, who he testified occupied one of the lowest rungs in the office hierarchy, occupied his old office.

Plaintiff Cardona testified that, after being reassigned from Aguadilla to San Juan by the new administration, he reported to his new job, and discovered that no one was waiting for him to tell him what his duties would be. He testified that his office had not been set up and was in a storage space with no desk, chair, or office supplies. He testified that he was forced to resign from this position against his will due to the fact that he had to travel from Moca to San Juan to go to work, a total of six hours travel time. However, he testified that he had worked in the central office of ARPE in San Juan and commuted there from Moca from the years 1995 to 1999, before his transfer from San Juan to ARPE's regional office in Aguadilla.

The Court finds that Plaintiff Cardona has not presented evidence of political discrimination that would lead a reasonable jury to conclude that the actions taken against him were motivated by political discrimination. Plaintiff Cardona testified that his duties were taken away, that he was transferred, that his salary was reduced substantially, and that he had a less desirable working environment after the change in administration. However, the Court finds that it is clear from the uncontested facts that his duties and salary were systematically increased by the prior New Progressive Party administration in a concerted attempt to protect him from reinstatement to the lesser duties and salary of his last legal career position upon the coming change in administration.

This was the administration's attempt to keep their NPP employees in positions with high salaries and a high level of responsibility. He received promotions and raises only days or weeks after his appointments. Like Plaintiff Marquez, Plaintiff Cardona was given salary raises and additional duties more typical of a trust position than a career position. Therefore, it was proper that his duties would be reduced upon the new administration's discovery of these personnel transactions. Plaintiff Cardona testified that his duties and salary were substantially increased during the trust positions he occupied. The Court notes that when an employee is reinstated to his past career position, the agency cannot take into account the increase in responsibility and salary that the employee experienced in his trust position. The personnel transactions the Plaintiff Cardona experienced, including his reduction in salary, reduction in duties, transfer to San Juan, transfer out of his office to a different desk, and removal of his parking space all represent legal, nondiscriminatory attempts by Defendants to reinstate him to his last career position according to the law. The Court finds that comments made generally around the office as to the employment future of the NPP employees do not bear a sufficient connection to the employment actions taken to indicate that the personnel actions taken by Defendants were motivated by political discrimination. The Court also finds that the assignment of Plaintiff Cardona's previous duties to PDP employees is insufficient to raise a suspicion of political discrimination, whether alone or in combination with the whole of the evidence presented by Plaintiff Cardona. Plaintiff Cardona simply has not presented evidence of discriminatory animus on the part of Defendants in reinstating him to his prior career position after the change in administration.

The Court finds that the conduct of the Plaintiffs' NPP administration would create a situation where a political party would permanently be in power in violation of constitutional principles and of the concept of a democracy, where the rule is by general vote. With Plaintiffs' plan to change trust positions to career positions, giving the executive the powers, duties, and salary of a trust position, it would become impossible to manage the agency in accordance with the will of the people. According to the U.S. Constitution, executives have the power to remove employees in policy making positions. *See Santana v. Calderon*, 342 F.3d 18 (1st Cir.2003). The plan put in place by Plaintiffs' administration controverts this principle, because it would allow employees who are effectively occupying trust positions to continue in those positions after the change in administration. As stated by the First Circuit in *Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236 (1st Cir.1986),

representative government needs a certain amount of leeway for partisan selection of agents in order to work. These agents may be policymakers, confidential employees, or others for whom party affiliation is an equally "appropriate" requirement. Appropriateness is, we think, a corollary to our system of determining the direction of governmental entities by the popular election of top office holders who have taken or are considered to have taken positions on one or more issues during a campaign. In order for the new administration to be given an opportunity to fulfill expectations, it must have available and also appear to have available significant facilitators of policy, people who have the personal and partisan loyalty, initiative, and enthusiasm that can make the difference between the acclaimed success of a government agency or program and its failure or, more typically, its lacklus-

ter performance. The presence of such persons advances the goals of representative government; their absence... "undercut[s]" such government.

## IV. CONCLUSION

In accordance with the above analysis, the Court **GRANTS** Defendants' motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure and **ENTERS JUDGMENT** for Defendants.

**IT IS SO ORDERED.**