# United States Court of Appeals
# For the First Circuit

Nos. 02-1105
    02-1107
    02-1108
    02-1072
    02-1269

UNITED STATES OF AMERICA,

Appellee,

v.

FELIX MERCADO IRIZARRY; MANUEL VAZQUEZ-MENDEZ;
ELIEZER MORERA-VIGO; HERNAN VAZQUEZ-MENDEZ;
GERMAN RODRÍGUEZ RODRÍGUEZ,

Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lynch, Circuit Judge.

Ignacio Fernández de Lahongrais for appellant Felix Mercado Irizarry.
David W. Roman, with whom Brown & Ubarri was on brief, for appellant Manuel Vazquez-Mendez.
Ramon M. Gonzalez for appellant Eliezer Morera-Vigo.
Michael J. Cruz for appellant Hernan Vazquez-Mendez.
Jean Philip Gauthier for appellant German Rodríguez Rodríguez.
Sonia I. Torres-Pabón, Assistant United States Attorney, Chief, Criminal Division, with whom H.S. Garcia, United States

Attorney, <u>Nelson Pérez-Sosa</u>, Assistant United States Attorney, Senior Appellate Attorney, and <u>Thomas F. Klumper</u>, Assistant United States Attorney, were on brief, for appellee.

_____

April 11, 2005

_____

**LYNCH**, **Circuit Judge**.  Nineteen individuals, including appellants Felix Mercado Irizarry, Hernan Vazquez-Mendez, Eliezer Morera-Vigo, Manuel Vazquez-Mendez, and German Rodríguez Rodríguez, were indicted on one count of conspiracy to distribute in excess of one kilogram of heroin, five kilograms of cocaine, and fifty grams of cocaine base, in violation of 21 U.S.C. § 846.  Defendants were charged with distributing drugs through several drug points in the Tibes Public Housing Project in Ponce, Puerto Rico, from 1992 until the return of the indictment in 2000.

All defendants save these five appellants pled guilty to the charge.  After a seventeen-day jury trial,  the five appellants were found guilty.  The court sentenced each to life imprisonment.  Each appeals from both the verdict of guilt and the life sentence, save Hernan Vazquez-Mendez, who appeals only his sentence.

**I.**

Challenges to Conviction

Mercado Irizarry

Mercado first argues that he was deprived of a fair trial based on the cumulative effect of various alleged evidentiary errors: admission of three statements about Mercado's involvement in murders and of other evidence of two murders committed in furtherance of the conspiracy.  He also argues for the first time here that the government committed a Brady violation.  Brady v. Maryland, 373 U.S. 83 (1963).

-3-

The first two challenged statements were made by Edwin Melendez-Negron, a co-conspirator who pled guilty to the conspiracy and became a cooperating witness for the government. Melendez-Negron testified that Mercado told him that Mercado was the driver of the car during the murder of a man named Hueso. On cross examination, when Melendez-Negron was confronted with his previously made contradictory statements, Melendez-Negron admitted that Mercado never told him anything about Heuso's murder. But he testified that Mercado was present when a man named Melito and Melendez-Negron discussed Hueso's murder. Mercado argues that, because Melendez-Negron retracted his earlier statement, the judge should have stricken Melendez-Negron's first statement from the record and instructed the jury not to consider it.

Melendez-Negron then testified that the murderer of Hueso, a man named Melito, told Melendez-Negron that Mercado helped him kill Hueso. This statement was admitted under Fed. R. Evid. 801(d)(2)(E) as a statement made by a co-conspirator in furtherance of the conspiracy. Mercado argues that the statement was wrongly admitted under the co-conspirator exception because the evidence was that the murder was a result of a personal vendetta, and not in furtherance of the drug conspiracy.

The final statement was by a police agent, Edwin Rosado Vega, who testified about prior consistent statements made by Melendez-Negron regarding Hueso's murder. This was permitted by

the district court on the basis that it was duplicative of Melendez-Negron's sworn statement already in evidence. That sworn statement was introduced into evidence by the defense when cross examining Melendez-Negron, in an attempt to impeach his earlier testimony. Although the defense introduced the sworn statement of Melendez-Negron, Mercado now argues that Melendez-Negron's sworn statement was made after his motive to fabricate a story regarding Hueso's murder arose, because the statement was made after he agreed to cooperate with the government and testify against Mercado. As a result, he argues, it was error to admit Rosado's statement.

Mercado further argues that the district court erred in allowing any evidence of the murder of Hueso, and evidence of another murder allegedly committed by Mercado of a man named Wally, because of a lack of evidence that these murders were committed in furtherance of the conspiracy. He argues that the only evidence that the murder of Wally was related to the conspiracy is the testimony of Julio Valentin Medina, who testified that he heard that Mercado killed Wally because of a "debt" and because he was a "stool pigeon." Mercado argues that this evidence is insufficient to show that Wally's murder was in furtherance of the conspiracy.

Finally, Mercado argues that the government committed a Brady violation by presenting testimony of the murders of Edwin and Michel Vázquez as overt acts in furtherance of the conspiracy,

despite the fact that the government had in its possession a sworn statement from a different cooperating witness that these murders were unrelated to the conspiracy, which it did not disclose to the defense. Mercado does not argue that the Brady violation itself warrants a new trial, but rather he argues that the disclosure of the statement would have allowed the court to perform a more informed balancing test under Fed. R. Evid. 403, and that balancing may have led to this evidence being disallowed as unfairly prejudicial. Further, he argues that the failure to disclose the statement impeded his cross examination of the government's testifying witness. The government denies there was any Brady violation.

We review the district court's evidentiary rulings as to preserved claims for abuse of discretion. United States v. Balsam, 203 F.3d 72, 84 (1st Cir. 2000).

The district court did not abuse its discretion in admitting the statements of Melendez-Negron or Officer Rosado. First, as to the testimony of Melendez-Negron, Mercado has impermissibly switched the basis for his argument twixt trial and appeal. His trial counsel did not move to have Melendez-Negron's earlier statement stricken on the ground, argued now, that the witness had disavowed his earlier testimony. Rather, he asked the judge to strike any testimony relating to the murder of Hueso on the ground that there was inadequate evidence that the murder was

in furtherance of the conspiracy. The "in furtherance" evidence was sufficient, for reasons described later. Considering his newly advanced argument on appeal, there was no plain error, and no error at all. It was up to the jury to evaluate the statements, including the contradictions.

As to the second statement, that Melito told Melendez-Negron that Mercado helped him kill Hueso, there was adequate evidence that the murder of Hueso was in furtherance of the conspiracy. This statement was admissible under the co-conspirator exception. Fed. R. Evid. 801(d)(2)(E). Mercado attempts to argue that Melito wanted to kill Hueso because Hueso stole drugs from him at a time before Melito joined the Tibes conspiracy, and therefore the murder could not have been found to be in furtherance of the Tibes conspiracy. This is not so. When Melito and Mercado murdered Hueso, they both worked for Melendez-Negron at Tibes, Melendez-Negron supplied them with the weapons to kill Hueso, and he instructed them to do so away from the Tibes Public Housing Project so as not to draw attention to the drug points. The government introduced evidence that the Tibes conspiracy had a pattern of killing those who had wronged members of the conspiracy in order to protect the conspiracy; there is adequate evidence that the murder of Hueso was a part of this pattern.

As to Officer Rosado's testimony concerning what Melendez-Negron had told him about Hueso's murder, the district

-7-

court correctly ruled that this was admissible under Rule 801(d)(1) because Melendez-Negron's consistent sworn statement about the murder had already been introduced into evidence by the defense in an attempt to impeach his direct testimony.

It is also clear that evidence of the murders of Hueso and Wally were not erroneously admitted. There was adequate evidence that each of these murders was committed in furtherance of the conspiracy. As to the evidence about Wally's murder, the government introduced testimony that Mercado murdered Wally because he owed a debt and because he was a "stool pigeon."

As to the unpreserved argument of an alleged Brady violation, we note that the statement in question was referred to in multiple reported cases before the start of Mercado's trial, and could easily have been discovered by Mercado's counsel, thus it is doubtful there is any Brady claim. In any event, given the corroborating testimony that the murders in question were committed in furtherance of the conspiracy, and the amount of evidence implicating Mercado in the conspiracy, he cannot carry his burden of showing that the alleged violation affected the result of the proceeding. See United States v. Conley, 249 F.3d 38, 45 (1st Cir. 2001).

## Morera-Vigo

Morera-Vigo makes the same arguments that Mercado does about admission of evidence of the murders of Hueso and Wally. We reject them for the same reasons.

In addition, Morera-Vigo argues that the court erred in allowing evidence of murders and drug dealing committed at other drug points in Ponce. He argues that there was a different conspiracy run by Angela Ayala, whose only connections to the Tibes conspiracy were that one of her drug points was in the Tibes Public Housing Project and that she acted as a supplier to other drug points there. He argues that evidence of Angela Ayala's drug activities at drug points other than her drug point at Tibes, and evidence of murders committed to protect those drug points, was improperly and prejudicially admitted into evidence. The government introduced this evidence on the theory that dealers at several drug points in and around the Tibes Public Housing Project assisted each other in their drug distribution efforts and in the protection of their drug points, and that its admission was necessary to understand the full scope of the conspiracy.

We bypass the question of admissibility; any error was harmless. Independently, there was more than adequate evidence for the jury to convict Morera-Vigo, including testimony and in-court identifications by three different cooperating witnesses implicating Morera-Vigo as a co-conspirator selling drugs and

committing violent acts to protect the conspiracy. There was also forensic evidence linking Morera-Vigo to murders committed in furtherance of the conspiracy.

In pro-se supplemental and reply briefing, defendant Morera-Vigo for the first time attempts to challenge his conviction based on the fact that "drug type and quantity was not submitted to the jury," and "the jury was not instructed to determine guilt on the elements of drug type and quantity." This argument is both factually and legally incorrect. The judge did instruct the jury that, through the special verdict form, they would be asked to determine both drug type and a minimum drug quantity for each defendant found guilty of the conspiracy. Citing United States v. Perez-Ruiz, 353 F.3d, 20 (1st Cir. 2003), Morera-Vigo argues that this was insufficient because the jury did not find an amount of drugs attributable to him specifically, rather than the conspiracy as a whole. This argument misunderstands our case law. Perez-Ruiz goes to the maximum sentence available based on the jury verdict of guilt in a conspiracy. Id. at 15. Perez-Ruiz says nothing about the vacation of a conviction for conspiracy based on lack of an individualized quantity determination. The district court instructed the jury on all the elements of the crime, namely, conspiracy to distribute drugs in violation of 21 U.S.C. § 846, and the jury found all the elements of the crime. This argument is meritless.

-10-

Rodríguez Rodríguez

Rodríguez argues that the district court erred in allowing the government to present testimony by five witnesses (Melendez-Negron, Enrique Malave Diaz, Gamalier Douglas, Julio Valentin Medina, and Joel Irizarry-Rosario), who had entered into cooperation agreements with the government which ensured them leniency in exchange for their testimony. He argues that such agreements gave each a motivation to present false testimony, and that such testimony was unfairly prejudicial. Testimony of cooperating witnesses is common and appropriate. There are also adequate procedural safeguards. See United States v. Dailey, 759 F.2d 192, 200 (1st Cir. 1985) (cooperating witness testimony permissible, but agreements should be read to jury, defense permitted to cross-examine about agreements, and cautionary instruction should be given to jury about nature of agreement and risk created thereby). There is no claim that such procedural safeguards were ignored in this case; rather, Rodríguez claims that such testimony is inherently unreliable and should have been excluded. This claim is meritless.

Manuel Vazquez-Mendez

Manuel Vazquez-Mendez argues that the district court erred in denying his Fed. R. Crim. P. Rule 29 motion for acquittal. He argues that there was testimony about at least six individuals named "Manuel," and the jury was left to speculate as to whether he

was any of them.    Further, he argues that the evidence affirmatively implicating him showed only his involvement with a different drug point involved in a different conspiracy, and therefore the government did not carry its burden of showing his involvement in the Tibes drug conspiracy that was charged in the indictment.

We review the denial of a Rule 29 motion for acquittal de novo.  United States v. Moran, 312 F.3d 480, 487 (1st Cir. 2002). In doing so we must decide, viewing the evidence in the light most favorable to the verdict of guilt, whether a reasonable factfinder could find the defendant guilty of the crime beyond a reasonable doubt. Id.  There was ample evidence to find Manuel Vazquez-Mendez guilty of the charged conspiracy.  A cooperating witness, Joel Irizarry-Rosario, made a valid in-court identification of Manuel Vazquez-Mendez, testified that he was involved with selling drugs at the Tibes Housing Project, and gave detailed testimony that Manuel Vazquez-Mendez was part of a group that hunted down and killed a rival drug dealer named Papito who was at war with the Tibes conspiracy.  Further, the government submitted forensic evidence that corroborated Irizarry-Rosario's testimony about Manuel Vazquez-Mendez's involvement in this murder.  Viewing the evidence in the light most favorable to the verdict of guilt, there was adequate evidence to find Manuel Vazquez-Mendez guilty of the conspiracy.

Sentencing

          In the aftermath of <u>United States</u> v. <u>Booker</u>, 125 S. Ct. 738 (2005), and <u>United States</u> v. <u>Antonakopoulos</u>, 399 F.3d 68, 76 (1st Cir. 2005), and acknowledging that each defendant preserved his claims of sentencing error, the government agreed to a remand for resentencing of all.[1]  Although pre-<u>Booker</u>, the sentencing court was required by the Guidelines, because it found the murder cross-reference in USSG §2D1.1(d)(1) to be applicable, to impose a life sentence, the statute permitted but did not require imposition of a life sentence.  The Guidelines are now advisory and the judge is no longer <u>mandated</u> to impose a life sentence, so given the government's concession, remand is appropriate.  Of course, we intimate no view on what sentences should be imposed on remand.

          We make one comment as to a sentencing claim made by defendants Hernan Vazquez-Mendez, Eliezer Morera-Vigo, Manuel Vazquez-Mendez, and German Rodríguez Rodríguez.  In supplemental briefing, each of these defendants claims that the maximum penalty he may receive based on the jury verdict alone is twenty years, the default statutory maximum derived from the catch-all provision in

---

          [1]The government also concedes that the supervised release term for Mercado of ten years was in error; the Guidelines provided for a five-year term and the ten-year term is available only as an upward departure.  Further, it concedes that the district court erred in delegating to the probation office the number of drug tests Morera-Vigo must undergo during his supervised release term, pursuant to this court's holding in <u>United States</u> v. <u>Melendez-Santana</u>, 353 F.3d 93 (1st Cir. 2003).

21 U.S.C. § 841(b)(1)(C).  This is so, they argue, because the jury did not make individualized quantity determinations as to the type and quantity of drugs that were attributable to each defendant specifically, but rather only determined drug type and quantity attributable to the conspiracy as a whole.

This argument is mistaken.  The indictment specified drug type and quantity for each defendant.  In addition, the district court instructed the jury that it would be asked to find beyond a reasonable doubt the drug type and quantity stated in the indictment for each defendant found guilty of joining the conspiracy.  Further, the jury was given a special verdict form for each defendant, which stated:

> Do you unanimously agree by proof beyond a reasonable doubt that the quantity of cocaine which was distributed and/or intended to be distributed as part of the conspiracy was five kilograms or more?
> Do you unanimously agree by proof beyond a reasonable doubt that the quantity of heroin which was distributed and/or intended to be distributed as part of the conspiracy was one kilogram or more?

The jury answered yes to both questions of the special verdict form for all five defendants.  As the case law of this circuit has made abundantly clear, the maximum statutory penalty available to the district court at sentencing for a defendant convicted of a drug conspiracy is based on the drug quantity and amount reflected in the jury verdict attributable to the conspiracy as a whole.  United States v. Perez-Ruiz, 353 F.3d 1, 15 (1st Cir. 2003).  Here, since

-14-

the jury found all defendants guilty of a conspiracy to distribute greater than one kilogram of heroin and five kilograms of cocaine, the relevant statutory maximum penalty would be the penalty set forth in 21 U.S.C. § 841(b)(1)(A), which is life imprisonment.

Conclusion

The conviction of each defendant is **affirmed**. The sentence for each defendant is **vacated** and the cases **remanded** for reconsideration of the sentence of each defendant in light of United States v. Booker, 125 S. Ct. 738 (2005).

**So ordered**.