**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 04-2005

TOMÁS R. CÉSPEDES RODRÍGUEZ,
Plaintiff, Appellant,

v.

VÍCTOR RIVERA HERNANDES, in his official capacity as former
Puerto Rico Secretary of Labor and in his personal capacity, and
MARÍA ROSA ITURREGUI-GONZÁLEZ, in her official capacity as former
Administrator of the Puerto Rico Vocational Rehabilitation
Administration and in her personal capacity,
Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

Before
Torruella, Lipez, and Howard, Circuit Judges.

Charles S. Hey-Maestre with whom DeJesús, Hey & Vargas,
Rosalinda Pesquera and Dávila, Pesquera & Murphy, were on brief,
for appellant.
Héctor J. Benítez Arraiza with whom Llovet Zurinaga & López,
P.S.C. was on brief, for appellee, María Rosa Iturregui-González,
in her individual capacity.
Juan M. Frontera Suau with whom Celina Romany, was on brief,
for Víctor Rivera Hernandes, both officially and personally and
María Rosa Iturregui, in her official capacity.

June 14, 2005

**Per Curiam**. Plaintiff Tomás Céspedes-Rodríguez appeals from the entry of judgments as a matter of law in favor of defendants Víctor Rivera Hernandez and María Rosa Iturregui-González on his claims that he was the victim of unlawful political discrimination, in violation of his First Amendment rights, and an unlawful termination from tenured public employment, in violation of his due process rights. Our consideration of the briefs and record convinces us that there is little to add to the two thoughtful opinions issued by the district court in support of its rulings -- especially in view of the fact that the argument section in plaintiff's brief (which contains only a few of the citations to the record required by Fed. R. App. P. 28(a)(9)(A)) largely fails to engage the court's reasoning. Consequently, we affirm largely on the basis of the district court's opinions and keep our additional remarks brief. See, e.g., Vargas-Ruiz v. Golden Arch Dev., Inc., 368 F.3d 1, 2 (1st Cir. 2004).

In July 1997, Céspedes, a member of Puerto Rico's New Progressive Party, assumed a trust position -- that of special aide in charge of Management Information Systems -- within the Vocational Rehabilitation Administration of Puerto Rico ("VRA"). In May 2000, Céspedes was granted a probationary (because an election was fewer than six months away) "transfer" to the career position of Executive Director IV, but the evidence shows that he retained his trust duties and, by special exception, his former

-2-

level of pay (which was almost double the pay of a typical Executive Director IV). This transfer was effectuated to protect Céspedes' employment in the event of a change in administrations -- an event which transpired in January 2001 after the Popular Democratic Party won the November 2000 elections.

In January 2001, Rivera was appointed Puerto Rico's Secretary of Labor and Human Resources, and Iturregui was appointed administrator of the VRA (which falls under the auspices of the Department of Labor and Human Resources). On February 5, 2001, Iturregui confirmed Céspedes' appointment to the Executive Director IV position, thus ending the probationary period. Thereafter, however, Céspedes' employment situation began to sour as he lost his office, access to a company car, and his former job duties. (In September 2001, a new trust position of Director of Management Information Services was created and awarded to one Ramón Burgos. Céspedes was made Burgos' Deputy Director -- at the same salary -- but Burgos assumed many of the job duties that Céspedes formerly performed.) Céspedes complained to the Personnel Administration System Appeal Board that he was the victim of unlawful political discrimination and sought a meeting with Iturregui, but his complaints went nowhere. Céspedes felt ostracized at work and, in March 2002, began three months of sick leave for depression.

On October 24, 2002, Céspedes was suspended from his position after a general personnel records audit ordered by

Iturregui allegedly uncovered evidence that Céspedes had falsified his resumé and had obtained his salary exception by dishonestly representing that he had a private sector offer at a high salary. On November 22, 2002, Céspedes received an informal hearing before an attorney. Céspedes denied the allegations and submitted evidence that they were false but was dismissed anyway, on December 5, 2002. The present lawsuit followed, but judgments as a matter of law in favor of Rivera and Iturregui were entered by the district court under Fed. R. Civ. P. 50 after the plaintiff rested.

The district court concluded, and we agree, that Céspedes had failed to meet his "threshold burden to produce sufficient direct or circumstantial evidence from which a rational jury could find that political affiliation was a substantial or motivating factor behind the adverse employment action [complained of]." Rodriquez-Rios v. Cordero, 138 F.3d 22, 24 (1st Cir. 1998). While this standard is necessarily imprecise, and evidentiary sufficiency in close cases may reside in the eye of the beholder, the evidence Céspedes submitted (which we have summarized in a light most favorable to him, see Guilloty Perez v. Pierluisi, 339 F.3d 43, 50 (1st Cir. 2003)), is insufficient.

Céspedes makes much of the fact that the supposedly less qualified Burgos, who was a member of the Popular Democratic Party, was assigned to assume the directorship duties that he formerly exercised. But the record demonstrates that those duties were, in

fact, trust duties which defendants were entitled to assign to a political confidante. See Nieves-Luciano v. Hernández-Torres, 397 F.3d 1, 2 (1st Cir. 2005). Céspedes also highlights the evidence that his termination was based on trumped-up charges, but even if we accept for the sake of argument that there is a trialworthy issue here, Céspedes still must show that the pretext masked unlawful political discrimination on the part of defendants (and not the "mere" desire to rid themselves of a vociferously unhappy employee). Cf. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-49 (2000) (pretext evidence in a Title VII case is sufficient only if the factfinder may infer that the pretext masks discrimination on the forbidden ground); Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 6-9 (1st Cir. 2000) (similar).[1] Thus, the pretext evidence, while certainly probative, channels our inquiry back to the basic question whether there is enough evidence for the jury to have found that Céspedes was terminated because of his political affiliation.

We share the district court's conviction that the answer to this question is "no." No rational jury could find that Céspedes' political affiliation (rather than his reaction to the loss of the job duties and perquisites that accompanied his

---

[1]In citing these cases, we do not imply that the McDonnell Douglas burden-shifting framework applicable to Title VII cases applies in the First Amendment political discrimination context. Rather, we express no opinion on the issue.

transfer from a supervisory trust position to a less prestigious and demanding career position) was the real reason for the charges against him. At most, the evidence tended to show only that Céspedes was dismissed unfairly by people who knew him to be of a different political affiliation than themselves more than a year and a half after they took power. For the reasons set forth by the district court, this is not enough.

Two final arguments advanced by Céspedes warrant only brief responses. First, Céspedes contends that the district court erroneously prevented him from introducing additional probative evidence of discrimination in the form of a letter his father wrote complaining about political discrimination at the VRA, and formal complaints of discrimination filed before various tribunals by Céspedes and other VRA employees. Such evidentiary determinations are reviewed only for an abuse of discretion, see, e.g., United States v. Mercado Irizarry, 404 F.3d 497, 500 (1st Cir. 2005), and the court here reasonably concluded that this evidence, some of which was hearsay, only tended to establish the authors' beliefs and could not substitute for actual evidence of the events described and the reasons those events occurred. Second, Céspedes contends that the jury could have found that his dismissal constituted a substantive due process violation. But the substantive due process doctrine is reserved for truly outrageous

government conduct, see, e.g., Rivera v. Rhode Island, 402 F.3d 27, 36 (1st Cir. 2005), and this case does not merit that description.

**Affirmed**.