# United States Court of Appeals
## For the First Circuit

No. 06-1459

JUSTO MORALES-SANTIAGO; RICARDO PÉREZ-VIRELLA;
SONIA CEDEÑO-ACOSTA; WILLIAM FERNÁNDEZ-AGUILA;
CONJUGAL PARTNERSHIP FERNÁNDEZ-CEDEÑO;
EMELY RAMOS-CASTILLO; SAMUEL RODRÍGUEZ-BURGOS,

Plaintiffs, Appellants,

v.

JOSÉ M. HERNÁNDEZ-PÉREZ, in his personal and official
capacities; ALEX RODRÍGUEZ; JOHN DOE; RICHARD ROE,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Jaime Pieras, Jr., <u>Senior U.S. District Judge</u>]

Before

Torruella and Lynch, <u>Circuit Judges</u>,
and DiClerico,[*] <u>District Judge</u>.

<u>John F. Nevares</u>, with whom <u>Carlos R. Ramírez</u> and <u>John F.
Nevares & Associates, P.S.C.</u> were on brief, for appellants.
<u>Sarah Y. Rosado-Morales</u>, Assistant Solicitor General, with
whom <u>Salvador J. Antonetti-Stutts</u>, Solicitor General, <u>Mariana D.
Negrón-Vargas</u>, Deputy Solicitor General, and <u>Maite D. Oronoz-
Rodríguez</u>, Deputy Solicitor General, were on brief, for appellees.

May 23, 2007

---

[*]    Of the District of New Hampshire, sitting by designation.

**LYNCH**, **Circuit Judge**.  This political affiliation case from Puerto Rico presents a few new twists.

In Rutan v. Republican Party of Illinois, 497 U.S. 62 (1990), the Supreme Court held that non-policymaking governmental employees are protected by the First Amendment from discriminatory promotion, transfer, recall, or hiring on the basis of political affiliation.  Id. at 79.  In Branti v. Finkel, 445 U.S. 507 (1980), the Court had held that non-policymaking public employees are protected from firing based solely on political affiliation, and that dismissed employees need not prove that they were coerced into changing their political affiliation.  Id. at 516-17; see also Elrod v. Burns, 427 U.S. 347, 372-73 (1976) (plurality opinion) (concluding that the First Amendment protects against patronage dismissals unless political affiliation is an appropriate requirement for the position in question).

In many places, when there is a change in control of the administration between two major political parties -- in Puerto Rico, a change between the Popular Democratic Party (PDP) and the New Progressive Party (NPP) -- overly zealous political operatives of the prevailing party terminate, demote, or reduce the salaries of employees affiliated with the outgoing opposition party. Sometimes these actions violate the First Amendment, see, e.g., Rodríguez-Marín v. Rivera-González, 438 F.3d 72, 75-76 (1st Cir.

-2-

2006), whereas other times, they do not, see, e.g., Vélez-Rivera v. Agosto-Alicea, 437 F.3d 145, 148-50 (1st Cir. 2006).

This action in turn sometimes causes a reaction. In Puerto Rico, we have noted that at times, "the outgoing party attempts to secure the continued tenure of its members in public jobs through a variety of devices, such as reclassifying policy-type appointments as career positions or making appointments in violation of Puerto Rico law." Sanchez-Lopez v. Fuentes-Pujols, 375 F.3d 121, 125 (1st Cir. 2004).

The plaintiffs in this case, with one exception, are employees of the Puerto Rico Public Service Commission (PSC).[1] They bring this action under 42 U.S.C. § 1983, alleging that a newly elected PDP administration engaged in political discrimination against them and violated their rights to equal protection and due process. They also bring various claims under Puerto Rico law. P.R. Const. art. II, §§ 1, 6, 7; Public Service Personnel Act, P.R. Laws Ann. tit. 3, §§ 1301-1431 (2003 & Supp.); id. tit. 31, § 5141. The district court granted summary judgment to the defendants on all federal claims and declined to exercise supplemental jurisdiction over the claims brought under Puerto Rico

---

[1] William Fernández-Aguila brings a claim under Puerto Rico law as the husband of plaintiff Sonia Cedeño-Acosta, a PSC employee. We refer to the PSC employees as "the plaintiffs" throughout this opinion.

law.  <u>Morales Santiago</u> v. <u>Hernandez Perez</u>, No. 03-1734, 2005 U.S. Dist. LEXIS 34704, at *42 (D.P.R. Dec. 20, 2005).  We affirm.

I.

We review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party.  <u>Acosta-Orozco</u> v. <u>Rodriguez-de-Rivera</u>, 132 F.3d 97, 98 (1st Cir. 1997).

On November 7, 2000, the PDP's candidate for governor won the general election in Puerto Rico, ushering in a change of administration from the incumbent NPP to the PDP.  The new PDP administration assumed power on January 2, 2001.

The plaintiffs in this case held various positions at the PSC in the former NPP administration, and all were affiliated with the NPP.  Details as to each plaintiff and defendant may be found in the thoughtful opinion by the district court.  <u>Morales Santiago</u>, 2005 U.S. Dist. LEXIS 34704, at *4-20.  We describe the essential facts.

Each of the plaintiffs, save one, had the following career path in common.  Each was a member of the NPP and held a trust position in the PSC under a chairman affiliated with the NPP party.  Each resigned that trust position several months before the November 2000 general election[2] and/or before the October 2002

---

[2]     During the period in question, Puerto Rico had a ban on most personnel actions, including changes in the category of employees, taking place within the two months prior to and the two

-4-

change in party control of the PSC's chairmanship.[3]  Each was reinstated to his or her former career position or a similar career position,[4] to which each was entitled under Puerto Rico law.  P.R. Laws Ann. tit. 3, § 1350(8)(a) (2003 & Supp.); see also Rosario-Urdaz v. Velazco, 433 F.3d 174, 176 (1st Cir. 2006); González-de-Blasini v. Family Dep't, 377 F.3d 81, 84 n.1 (1st Cir. 2004).  However, each was rewarded by the then-NPP administration with a salary more commensurate with the previously held trust position than with the reinstated career position.  This was done through a device called "salary by exception."

---

months after a general election.  P.R. Laws Ann. tit. 3, § 1337 (2003 & Supp.); see also Colón-Santiago v. Rosario, 438 F.3d 101, 104 (1st Cir. 2006).  A similar ban currently exists at P.R. Laws Ann. tit. 3, § 1462h.

[3]    Defendant José Hernández-Pérez became Chairman of the PSC on October 1, 2002.  His predecessor, Waldemar Quiles-Rodríguez, who was affiliated with the previous administration, had previously sought an order from the federal district court enjoining the new PDP governor from removing him as Chairman before the expiration of his term on September 28, 2002.  Quiles Rodriguez v. Calderon, 172 F. Supp. 2d 334, 337 (D.P.R. 2001).  Although no injunction issued in light of the plaintiff's failure to file certified English translations of Spanish documents, the district court found that Quiles-Rodríguez was entitled under Puerto Rico law to hold the chairmanship until the expiration of his term.  Id. at 348.

[4]    This return to career positions is common because many, though not all, trust positions are policymaking positions into which a newly elected administration may place members of its party without violating the First Amendment.  See Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 130-32 (1st Cir. 2005); Jimenez Fuentes v. Torres Gaztambide, 807 F.2d 236, 241-42 (1st Cir. 1986) (en banc).

In October and November 2002, within approximately one month of the PDP's gaining control of the PSC's chairmanship, the PDP administration reduced the salaries of each plaintiff to within (or above) the range of his or her relevant career job classification. The new administration stated that it did this to correct excessive salaries illegally awarded by the outgoing NPP administration.

Specifically, under the applicable regulations for re-entry to career service, an increase in salary by exception for an employee returning to career service from a trust position would have been authorized only if two conditions were met: (a) the employee had served in the same trust position for a continuous period of not less than five years, and (b) the employee's duties and responsibilities in the career position were equivalent to those in the trust position. Uniform Compensation Regulation, P.R. Reg. No. 3109, § 4.8.7 (June 7, 1984). Even if those two conditions were met, it would have been discretionary whether the salary was raised, and any increase would have been limited by the maximum salary in the schedule for the career service position. Id.

The remaining plaintiff, Sonia Cedeño-Acosta, served as Associate Commissioner of the PSC, a trust position, from April 2000 until November 2001. At that point in time, she returned to a career position and received a salary increase by exception.

Shortly thereafter, she was appointed to a different trust position, where she remained until she was removed by the new PDP administration on September 30, 2002. Cedeño-Acosta was reinstated to her previous career position at a salary that was substantially less than the salary she had been receiving in the trust position, but that was well within the range for the career position. All of the PSC's actions were taken pursuant to the Uniform Compensation Act, P.R. Laws Ann. tit. 3, §§ 760-760j (2003 & Supp.), and regulations implementing that act.

The plaintiffs filed suit, alleging primarily that the salary reductions by the defendant PDP administrators constituted political discrimination.[5] In addition to the First Amendment claim, the plaintiffs asserted equal protection and procedural due process claims, as well as various claims under Puerto Rico law. The general defense of the new administration was that the old NPP administration had violated Puerto Rico law by increasing the plaintiffs' salaries by exception and that Puerto Rico law fully authorized the corrective measures the new administration had taken.

---

[5] One of the plaintiffs also initially alleged that her employment conditions had been substantially eroded. We understand the issue on appeal to be limited to the reduction in the plaintiffs' salaries. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

The district court granted summary judgment to the defendants on all federal claims, dismissing them with prejudice. Morales Santiago, 2005 U.S. Dist. LEXIS 34704, at *42. On the political discrimination claim, the district court found that the plaintiffs had failed to establish a prima facie case, by failing to adduce sufficient evidence that political affiliation was a substantial or motivating factor in the salary reductions, in the face of the defendants' stated reasons that they acted to correct the illegality of the earlier personnel actions. Id. at *22, 35. The district court also found that the plaintiffs' evidence had failed to create a material issue of fact that they were entitled to their previous salaries, and that the adjusted salaries of all the plaintiffs were, at the least, at the upper end of the salary scale for their respective career positions. Id. at *34-35. Finally, the district court rejected the plaintiffs' reliance on various statements allegedly made by the defendants, finding such evidence insufficient to raise a genuine issue of material fact as to the defendants' motivation. Id. at *31-32.

The district court held that the equal protection claim was essentially duplicative of the First Amendment claim and dismissed it for the same reasons. Id. at *36-37. The court also held that a post-deprivation hearing satisfied any constitutional due process requirements, noting that the plaintiffs had not been terminated from their jobs. Id. at *39-42. Having dismissed the

-8-

plaintiffs' federal claims, and having found no independent basis for federal jurisdiction over the Puerto Rico law claims, the district court declined to exercise supplemental jurisdiction and dismissed the Puerto Rico law claims without prejudice. Id. at *42.

## II.

A.  First Amendment Political Discrimination Claims

There is an initial question of law as to whether the plaintiffs have stated a First Amendment claim at all with respect to the reduction of their higher salaries that had been previously raised by exception. The claim does not literally fall within the scope of Rutan's extension of First Amendment protection from job dismissals to promotion, transfer, recall, or hiring decisions. 497 U.S. at 79. Further, the analysis in Rutan as to why the protection extends to these categories of job actions does not flow readily to the reduction of salaries enhanced by exception. See id. at 71-79. However, the defendants chose not to make this argument in their papers in the district court or here, although it did come up at oral argument. In the absence of briefing on the issue, we turn to the summary judgment argument.

In Colón-Santiago v. Rosario, 438 F.3d 101 (1st Cir. 2006), this court provided a description of the relevant Puerto Rico employment law. Id. at 108-09. We highlight the key points for this case. Public employees in Puerto Rico are either

confidential (trust) employees or career employees. P.R. Laws Ann. tit. 3, § 1349 (2003 & Supp.).[6] When a career employee moves to a trust position, the employee has a right to reinstatement to a position equivalent to the former career position, but may not retain the increased salary of the trust position. Id. § 1350(8)(a)[7]; see also Colón-Santiago, 438 F.3d at 111.

As the district court sagely observed, this has created the following dynamic. Morales Santiago, 2005 U.S. Dist. LEXIS 34704, at *20-21. It has become common in Puerto Rico that as an election approaches, the administration in power, as a political measure to protect its party members, returns its trust employees to their previous positions as career employees. They do so not at the salary then scheduled for the career position, as provided for by Puerto Rico law, see, e.g., P.R. Laws Ann. tit. 3, § 1350(8)(a) (2003 & Supp.), but rather at a salary in excess of that traditionally awarded for the position. See, e.g., Cardona Martinez v. Rodriguez Quiñones, 306 F. Supp. 2d 89, 96-97 (D.P.R. 2004); see also Céspedes Rodríguez v. Rivera Hernandes, 135 F. App'x 441, 442 (1st Cir. 2005) (per curiam). Where a higher salary by exception is awarded in violation of Puerto Rico law, the new administration has authority to reduce that excessive salary to the

---

[6]    A similar provision can now be found at P.R. Laws Ann. tit. 3, § 1465.

[7]    A similar provision can now be found at P.R. Laws Ann. tit. 3, § 1465a(1).

scheduled salary for the career position.  See Colón-Santiago, 438 F.3d at 111; Cardona Martinez, 306 F. Supp. 2d at 97-98.  An employee whose salary is reduced may bring an appeal before the Appeals Board of the Personnel Administration System.

We simplify the analysis to whether there was evidence to create a material issue of fact that political affiliation was a substantial or motivating factor in the salary reduction. Plaintiffs say that their salaries were reduced because the defendants knew that they were NPP members.  Defendants counter that the salaries were reduced because the previous raises had been given in violation of Puerto Rico law and that these reductions would have occurred regardless of plaintiffs' political affiliation.

Plaintiffs do not dispute that no disparate impact claim is recognized under Rutan, see Sanchez-Lopez, 375 F.3d at 140, but nonetheless argue that an inference of intentional discrimination is raised from the mere fact that they were all known NPP members and their salaries were reduced by the new PDP heads of the PSC. In context, that is not a rational inference.

It is quite likely that when a new administration looks to correct violations of Puerto Rico law as to the salaries of employees retained from the prior administration, the majority -- if not all -- of the corrections will be to salaries of persons belonging to the party of the now-deposed prior administration.

Indeed, such corrective action may be needed to prevent abuse of the Rutan doctrine. Rutan is clear that the democratic process and, correspondingly, the electorate's decision to put a different political party in power should not be frustrated. 497 U.S. at 70. The payment of unwarranted, higher salaries awarded by the prior administration would leave a new administration with fewer financial resources available to do the will of the voters.

Here, the Puerto Rico laws and regulations that put limits on the extent of government salaries were meant to secure compliance with Puerto Rico's constitutional policy of equal pay for equal work. Colón-Santiago, 438 F.3d at 109; see also P.R. Const. art. II, § 16. These provisions also help prevent Rutan abuses by authorizing the new administration to take corrective actions to undo preferential salary adjustments given by a former administration to its stalwarts.

The plaintiffs have offered no evidence that the defendants' position that the salaries were reduced to correct violations of Puerto Rico law is false.[8] Perhaps in rare cases

---

[8] The plaintiffs argue that § 4.11 of the Uniform Compensation Regulation gives discretion to the nominating authority to grant higher salaries to employees when, after rigorous evaluation, it is determined that the merits of the individual case justify it and such a salary increase would provide a benefit to the agency. However, the plaintiffs fail to address the fact that § 4.11 also provides that when there is a change of category from a trust position to a career position, the employee's salary will be set in accordance with § 4.8 and its prerequisites for salary by exception.

such an explanation by administrators can be said clearly to be a pretext. Not here. The defendants submitted evidence establishing that the plaintiffs had failed to meet the prerequisites for any award of salary by exception. Further, there is no evidence here that any state adjudicatory body has ruled that the defendants are wrong to have taken corrective actions. See Sanchez-Lopez, 375 F.3d at 131. In short, we agree with the district court's assessment of the record: that there was no material dispute that the plaintiffs' previous salary raises did not comport with Puerto Rico law, and that the new administration's adjustments corrected the inflated salaries by reducing them to the levels appropriate for their respective positions.

The plaintiffs' assertion that the defendants imposed salary reductions only on NPP members, and not on similarly situated PDP members, is not sufficient to rebut the defendants' showing. There is no indication in the record that there were any similarly situated PDP members. This circumstance is not surprising because it is unlikely that the NPP administration would place members of the PDP into key policymaking trust positions, and it is even more unlikely that the NPP would have illegally increased the salaries of any such PDP members on their return to

career positions.  There is no evidence here of an inconsistently applied practice of remedying prior illegalities.[9]  See id. at 132.

B.          Fourteenth Amendment Equal Protection Claims

The plaintiffs also appeal from the district court's dismissal of their equal protection claims.  The equal protection argument founders, however, because it is merely a "restatement of appellant[s'] failed First Amendment claim[s]."  Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005); see also Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992) (declining to apply equal protection analysis in light of the overlap between plaintiffs' First Amendment and equal protection claims).

C.          Fourteenth Amendment Procedural Due Process Claims

The plaintiffs also appeal from the dismissal of their procedural due process claims.  Although it is true that career employees have a property interest in their continued employment under Puerto Rico law, Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 6 (1st Cir. 2000), the plaintiffs here were not terminated from their career positions, but rather only had their salaries by exception carved back.  Further, Puerto Rico law does not recognize a property interest in salaries paid to government employees that

---

[9]      Indeed, it is not clear that a political discrimination claim could be maintained where reductions in salaries by exception are at issue, even when there is inconsistent application of regulatory discretion as to whether to reduce illegal salary increments.  We do not reach that issue.

are illegally awarded.  See Colón-Santiago, 438 F.3d at 109-11. Accordingly, there can be no viable procedural due process claims here.  See Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 32 (1st Cir. 1996) (requiring plaintiff to demonstrate a protected interest in life, liberty, or property to prevail in action alleging deprivation of procedural due process).

D.        Supplemental Jurisdiction

Having properly dismissed the plaintiffs' federal claims,[10] the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the claims brought under Puerto Rico law.  See 28 U.S.C. § 1367(c)(3); see also Ramos-Piñero v. Puerto Rico, 453 F.3d 48, 55 (1st Cir. 2006).

III.

For the foregoing reasons, we affirm.  Costs are awarded to defendants.

---

[10]     Since we agree with the district court that the defendants were entitled to summary judgment on the federal claims, we do not address the parties' arguments regarding qualified immunity.