# United States Court of Appeals
## For the First Circuit

No. 05-1238

VIVIAN COLÓN-SANTIAGO, ET AL.,
Plaintiffs, Appellants,

MYRIAM NOEMÍ HERNÁNDEZ, ET AL.,
Plaintiffs,

v.

HÉCTOR R. ROSARIO, ET AL.,
Defendants, Appellees,

RAÚL E. ROSADO-TORO, ET AL.,
Defendants.

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

———————

Before
Torruella, Circuit Judge,
Gibson, John R.,[*] Senior Circuit Judge,
and Lipez, Circuit Judge.

———————

Pablo Landrau-Pirazzi, with whom Aldarondo & López Bras, was on brief, for appellants.
Courtney R. Carroll, with whom José R. Cintrón-Rodríguez, Litigation Division, Puerto Rico Electric Power Authority, Roberto Sánchez-Ramos, Secretary of Justice, Salvador Antonetti-Stutts, Solicitor General, Eduardo A. Vera-Ramírez, Eileen Landrón-Guardiola, and Landrón & Vera, LLP, were on brief, for appellees.

———————

February 21, 2006

———————

———————

[*] Of the Eighth Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**. This appeal involves twenty-seven current and former employees ("Appellants") of the Puerto Rico Electric Power Authority ("PREPA") who filed suit in the United States District Court for the District of Puerto Rico on December 21, 2001, alleging violations of the First, Fifth, and Fourteenth Amendments. Defendants-appellees ("Appellees"), who are officials in charge of PREPA as well as PREPA itself, filed a motion for summary judgment which the district court granted. Appellants filed various motions for reconsideration, all of which were denied. Appellants now appeal the grant of summary judgment and the denial of their motions for reconsideration. We affirm in part, vacate in part, and remand.

## I.  Background

Appellants are all members of the New Progressive Party ("NPP"), which was the political party in power in Puerto Rico before the 2000 general election. At the time of the election, Appellants, who had previously held career positions, were in trust positions.[1] In the election, held on November 7, 2000, the NPP was defeated by the Popular Democratic Party ("PDP"). In December 2000, PREPA's then-Executive Director Miguel Cordero ("Cordero")

---

[1] In Puerto Rico, public employees are categorized as "career" or "trust/confidential" employees. Trust employees are involved in the formulation of policy and are "of free selection and removal." 3 P.R. Laws Ann. § 1350(8). Career employees are "selected strictly on merit and can be removed only for cause." Jiménez-Fuentes v. Torres-Gaztambide, 807 F.2d 236, 246 (1st Cir. 1986).

reinstated ninety-two employees, including Appellants, from trust positions to career positions. In many cases, Cordero awarded the reinstated employees the same salaries ("reinstatement salaries") they had earned in their trust positions; in some cases merely token salary adjustments took place. Upon reinstatement, these employees were earning more than others who held comparable positions. These transactions occurred during the electoral ban period, governed by a statutory provision prohibiting certain public service personnel transactions two months prior to and two months after an election. See 3 P.R. Laws Ann. § 1337; PREPA Personnel Regulations for Non-Union Employees Article 10.[2]

In January 2001, PREPA's Governing Board appointed Appellee Héctor R. Rosario Hernández ("Rosario") as Executive Director. Thereafter, PREPA's Human Resources Directorate reviewed all personnel transactions carried out during the electoral ban period. PREPA also requested and obtained legal opinions from a local law firm regarding the reinstatements that occurred during the electoral ban period and the assignment of salaries to employees reinstated to career positions. The law firm issued two

_____

[2] The Personnel Act is not applicable to public corporations that operate as private businesses. PREPA is such a public corporation. However, PREPA and corporations like it are required to regulate their personnel issues in such a way as to protect and guarantee the merit principle. See Torres-Solano v. PRTC, 27 P.R. Offic. Trans. 499 (P.R. 1990); Flores-Román v. Ramos-Gonzáles, 27 P.R. Offic. Trans. 601 (P.R. 1990). To that end, PREPA promulgated Personnel Regulations for Non-Union Employees.

opinions, one in March 2001 and the other in May 2001. In these opinions, the firm opined that reinstatements which occurred during the electoral ban were null and void, and that the reinstatement salaries, to the extent they were on par with the employees' trust position salaries, were also null and void.

At the conclusion of the review process, PREPA set out to address the reinstatements. Appellee Ana Blanes ("Blanes"), PREPA's Director of Human Resources, along with Aníbal Hernández ("Hernández"), a PREPA salary specialist, devised the following threshold formula: the salary assigned by Cordero to each reinstated employee ("discretionary salary") was compared to the salary the employee would have earned if he had remained in his last career position, accounting for natural salary increases ("non-discretionary salary"). If the discretionary salary exceeded the non-discretionary salary by more than 10%, the employee's salary was adjusted to the non-discretionary salary. If the difference between the two salaries was less than 10%, the employee's salary remained the same.

On June 17, 2001, using this formula, PREPA reduced the salaries of thirty-three reinstated employees, including twenty-six of the appellants in this case. The salaries of the remaining fifty-nine employees were not adjusted. The affected employees were advised of their right to appeal the decision by filing an administrative complaint at PREPA's Labor Affairs Office.

Appellants instead filed a complaint in the district court on December 21, 2001, naming as defendants PREPA and various PREPA officials in their official and individual capacities. The complaint was amended on February 26, 2002.

In the amended complaint, Appellants brought claims pursuant to 42 U.S.C. § 1983, alleging that Appellees violated their First, Fifth, and Fourteenth Amendment rights under the United States Constitution. Appellants also alleged violations of certain laws of Puerto Rico. Specifically, the complaint alleged that (1) Appellees violated Appellants' due process rights under the Fifth and Fourteenth Amendments by reducing Appellants' salaries without giving them an informal hearing; and (2) Appellees violated Appellants' First Amendment rights of freedom of speech and association because a substantial or motivating factor in the salary reductions was Appellants' political affiliation. In addition, there were First Amendment claims that certain Appellants were harassed in the workplace due to their political views, and one Appellant claimed that she was terminated on politically discriminatory grounds.

On August 14, 2003, Appellees in their official capacities filed a partial motion for summary judgment, arguing that the First Amendment salary reduction claims and due process claims should be dismissed. That same day, Appellees in their individual capacities filed a motion for summary judgment, arguing

that the complaint should be dismissed in its entirety.  On October 17, 2003, Appellees in their official capacity filed another motion for partial summary judgment regarding the politically-motivated harassment and termination claims. Appellants opposed the first two motions to summary judgment, but not the third.  Instead, Appellants filed a motion to dismiss the third motion, arguing that it had not been timely filed.[3]

On October 16, 2003, the district court referred the first two motions for summary judgment to a magistrate judge.  On November 3, 2003, the magistrate judge issued a Report and Recommendation recommending that the motions be denied.  Both parties filed objections to the Report and Recommendation.  On March 29, 2004, the district court issued an Opinion and Order in which it rejected the magistrate's recommendation and dismissed Appellants' complaint in its entirety.  Regarding the First Amendment salary reduction claims, the district court found that "[t]he allegations and evidentiary support given by Plaintiffs amounts to a prima facie case only with the broadest of interpretations" because "Plaintiffs have not presented any specific evidence other than a blanket assertion of being members of the opposing political party."  The district court then went on to say that, even assuming Appellants had established a prima facie

---

[3]   The district court ruled that this motion was moot after entering its Opinion and Order.

case, Appellees had provided a sufficient non-discriminatory reason for their actions. In this regard, the district court stated that Appellants' reinstatements were illegal because they occurred during the electoral ban and because the salaries they received upon reinstatement were too high. The court then found that Appellants had not shown that the non-discriminatory reason was pretextual.

Regarding the due process claims, the district court found that, because the reinstatements were illegal, Appellants did not have protectable property rights to their positions and Appellees were not required to give them hearings before undertaking the salary reductions. The district court did not address, or even mention, the politically-motivated harassment and termination claims (which had also not been referred to the magistrate), but nevertheless dismissed the entire complaint.

On April 1, 2004, Appellants filed a motion for reconsideration of the Opinion and Order ("First Motion for Reconsideration"), arguing that the district court erred in finding that the reinstatements violated the electoral ban. On April 2, 2004, Appellants filed a motion for clarification and/or reconsideration ("Second Motion for Reconsideration"), arguing that the district court's Opinion and Order had failed to address the politically-motivated harassment and termination claims even though the Opinion and Order dismissed the entire complaint. The district

court summarily denied both motions on May 10, 2004.  On July 6, 2004, final judgment was entered.

On July 12, 2004, Appellants filed a motion for reconsideration of the judgment ("Third Motion for Reconsideration").  On July 19, 2004, Appellants filed a motion to supplement the Third Motion for Reconsideration ("First Motion to Supplement").  On July 22, 2004, Appellants filed a second motion to supplement the Third Motion for Reconsideration ("Second Motion to Supplement").[4]  On January 10, 2005, the district court denied the Third Motion for Reconsideration and the First and Second Motions to Supplement.  Appellants filed an appeal on January 19, 2005.  On appeal, Appellants argue that the district court erred in granting summary judgment on their due process claims and their politically-motivated harassment and termination claims.  They also argue that the district court abused its discretion in denying their motions for reconsideration.  They do not challenge the district court's grant of summary judgment on the salary-reduction First Amendment claims.

---

[4]  The district court characterized the two motions to supplement as motions for reconsideration.  However, it is clear from the record that the motions to supplement were just that: motions to supplement the Third Motion for Reconsideration.

## II. Discussion

### A. Standard of Review

We review an entry of summary judgment <u>de</u> <u>novo</u>. <u>Cepero-Rivera</u> v. <u>Fagundo</u>, 414 F.3d 124, 131 (1st Cir. 2005). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We review a district court's denial of a motion for reconsideration for abuse of discretion. <u>Rivera</u> v. <u>Puerto Rico Aqueduct & Sewers Auth.</u>, 331 F.3d 183, 192 (1st Cir. 2003).

### B. Jurisdiction

Before we reach the merits, we must first address whether we have appellate jurisdiction over this case. Appellees argue that Appellants failed to timely file their appeal and that we therefore lack jurisdiction. In the alternative, Appellees argue that we only have jurisdiction to review the denial of the Third Motion for Reconsideration and the First and Second Motions to Supplement.

Under Federal Rule of Appellate Procedure 4 ("Rule 4"), a notice of appeal in a civil case "must be filed with the district clerk within 30 days after the judgment or order appealed from is entered." Fed. R. App. P. 4(a)(1)(A). A judgment or order is

-9-

"entered" for Rule 4(a) purposes when, "if Federal Rule of Civil Procedure 58(a)(1) requires a separate document, . . . the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a) and . . . the judgment or order is set forth on a separate document".  Fed. R. Civ. P. 4(a)(7).[5]

A motion for reconsideration under Federal Rule of Civil Procedure 59(e) ("Rule 59(e)") is timely if it is filed within ten days after entry of the judgment.  If a party timely files a Rule 59(e) motion then the time to file an appeal does not begin to run until the district court enters judgment on the Rule 59(e) motion. See Fed. R. App. P. 4(a)(4)(A)(iv).  However, "a subsequent motion for reconsideration served within ten days of the order denying the initial motion for reconsideration but more than ten days after the entry of the original judgment does not toll the time for appealing from that judgment."  See Aybar v. Crispín-Reyes, 118 F.3d 10, 14 (1st Cir. 1997) (internal quotation marks and citation omitted).

The instant case involves a peculiar situation, mainly due to the unusually lengthy period of time between the district court's Opinion and Order and the entry of judgment.  On March 29, 2004, the district court issued its Opinion and Order granting summary judgment.  However, the court did not enter judgment on a

---

[5]  Under Rule 4(a)(7), if 150 days run from the entry of the judgment or order on the civil docket, but judgment has not been set forth in a separate document, the judgment or order is considered "entered."  This clause of Rule 4(a)(7) does not apply in the instant case.

separate document, as required by Federal Rule of Civil Procedure 58 ("Rule 58"), until July 6, 2004. In the meantime, Appellants filed two motions for reconsideration which were rejected by the district court before judgment was entered. After judgment was finally entered in accordance with Rule 58, Appellants filed their Third Motion for Reconsideration, which they argue tolled the time for appealing the judgment entered on July 6.

Appellees argue that the Third Motion for Reconsideration did not toll the time for appealing the judgment. First, Appellees argue that Rule 4 was amended in 2000 and that as a result, having a judgment entered on a separate document does not affect the validity of an appeal from that judgment. See Fed. R. App. P. 4(a)(7)(B) (2000). In other words, due to the 2000 amendment, Appellants could have validly appealed from the March 29 Opinion and Order, or the denial of the First and Second Motions for Reconsideration, even though no judgment had been set forth in a separate document. While this may be true, in our view it does not follow that Appellants were obligated to appeal before judgment was entered.

Appellees' second argument is that the Third Motion for Reconsideration was a successive motion for reconsideration, and that a successive motion for reconsideration will generally not act to further toll the time period for filing an appeal if it just repeats the arguments of an initial, timely motion for

reconsideration. Appellees argue that the Third Motion for Reconsideration therefore cannot toll the filing period because it simply rehashes the arguments made by Appellants in their First Motion for Reconsideration. This characterization is erroneous because the Third Motion for Reconsideration contains two arguments not mentioned in the First or Second Motions for Reconsideration. Furthermore, this argument is premised on the assumption that Appellants did not file the Third Motion for Reconsideration within 10 days of the entry of judgment.

Appellees' arguments are thus meritless. As we noted above, it is well-settled that: (1) the thirty-day window to appeal from a judgment does not begin to run until that judgment is "entered"; (2) judgment is not "entered" until it is set forth in a separate document as required by Rule 58; and (3) in this case, judgment was not set forth in a separate document as required by Rule 58 until July 6, 2004. Thus, the time to appeal did not begin to run until July 6, 2004. Appellants filed their Third Motion for Reconsideration within ten days of the entry of judgment, and filed a notice of appeal within thirty days of the denial of the Third Motion for Reconsideration. While it is true that "a subsequent motion for reconsideration served within ten days of the order denying the initial motion for reconsideration but more than ten days after the entry of the original judgment does not toll the time for appealing from that judgment," Aybar 118 F.3d at 14

-12-

(internal quotation marks and citation omitted), here, the "subsequent" motion for reconsideration was filed within ten days of the entry of judgment.

In sum, the time to appeal did not begin to run until July 6, 2004, when judgment was entered. Regardless of what happened prior to the entry of judgment, Appellants filed a Rule 59 motion within ten days of the entry of judgment. This Third Motion for Reconsideration was therefore timely and thus tolled the time for Appellants to file their appeal. When the district court denied the motions on January 10, 2005, Appellants filed a notice of appeal within thirty days. We therefore have jurisdiction over the appeal in its entirety, and not just the three motions filed after judgment was entered. We turn now to the merits.

## C. Due Process

Under the Due Process Clause of the Fourteenth Amendment, a state may not discharge a public employee who possesses a property interest in continued employment without due process of law. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985); Santana v. Calderón, 342 F.3d 18, 23 (1st Cir. 2003). "The Constitution does not create property interests; instead, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . .'" Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 6

-13-

(1st Cir. 2000) (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)).

Under Puerto Rico law, career employees have a property interest in their continued employment. Id. However, that interest is non-existent ab initio if the employees gained their career positions in violation of the Personnel Act or regulations promulgated thereunder. González-de Blasini v. Family Dep't., 377 F.3d 81, 86 (1st Cir. 2004). Further, a person holding a career position "who accepts a trust position has an absolute right to be reinstated to a career position equal to the last position she held as a career employee." Id. at 84 n.1. Here, Appellants are not claiming that they were not reinstated to their former career positions, or that Appellees fired or demoted them from their career positions without due process. Rather, they are claiming that they were deprived of due process when Appellees reduced the salaries they had been granted upon reinstatement. The issue before us, then, is whether Appellants had a property interest in their reinstatement salaries that would entitle them to due process protections.

The Personnel Act sets up a merit system for career employees. Id. at 86.[6] In Puerto Rico, authorities are forbidden from making "any movement of personnel involving areas essential to

---

[6] As we noted above, although not under the Personnel Act, PREPA is still required to regulate its personnel issues in a way that guarantees and protects the merit principle.

the merit principle, such as appointments, promotions, demotions, transfers and changes in the category of employees" two months prior to and two months after an election.  3 P.R. Laws Ann. tit. 3, § 1337; PREPA Personnel Regulations Art. 10.  The parties spend much of their time arguing whether Appellants' reinstatements from trust positions to career positions, which occurred in December 2000, violated the electoral ban.  Appellants argue that the reinstatements did not violate the electoral ban due to a special Normative Letter from the Central Personnel Administration Office ("OCAP") issued in 2000.  Appellees challenge the validity of the Normative Letter and argue that it is invalid because it is contrary to the law of Puerto Rico.  We need not reach this issue because, even assuming that the reinstatements in general did not violate the electoral ban, Appellants do not have a valid property interest in their reinstatement salaries.

First, we agree with Appellees' argument that Appellants' reinstatement with salaries equivalent to the salaries they earned at their trust positions constituted a de facto promotion.  Normally, a promotion means a higher salary and increased duties and responsibilities, along with a change in title.  Appellants here received, in a certain sense, the best of both worlds: a higher salary without an increase in duties and responsibilities.  Further, Appellants were paid on a higher level than others with similar job titles and job functions.  Since Appellants received

their de facto promotions during the electoral bans, these personnel actions were in violation of the electoral ban. We wish to be clear that we are in no way expressing any opinion as to whether a reinstatement in general during the electoral ban is per se invalid. However, it is undisputed that promotions are prohibited by the ban. To the extent that the reinstatements constituted de facto promotions, they violated the electoral ban.

Even if these reinstatements had not occurred during the electoral ban, Appellants still would not have a property interest in their reinstatement salaries. Under Article II, § 16 of the Puerto Rican Constitution, employees have a right "to equal pay for equal work." As a result of this principle and the merit principle, the Personnel Act provides that, when a trust employee who previously held a career position is reinstated to her former career position, she is entitled to the salary for that position as well as benefits extended to the position while she was in a trust position. See 3 P.R. Laws Ann. tit. 3, § 1350(8). Under PREPA's Personnel Regulations for Non-Union Employees, promulgated in accordance with the merit principle, a reinstated trust employee's "assigned salary will never be less than the one equivalent for that occupational group and to the corresponding employee's salary level, if he had remained in his last career position." PREPA Personnel Regulations for Non-Union Employees Art. 11.4.3. There is thus no question that, under the Personnel Act and PREPA's

-16-

regulations, Appellants had a property interest in a salary equal to the salary they would have received had they remained in career positions.

Appellants wish to go one step further, however, and argue that they have a property interest in a salary higher than the one they would have had if they had remained in their career positions. Appellants base their argument on Article 11.4.3 of the Personnel Regulations, which states that when employees are reinstated to career positions "[a]ll of the cases which bear a possible salary reduction must be submitted to the Executive Director, who will have the discretion of whether or not to apply said reduction." According to Appellants, this regulation gives the Executive Director discretion to award whatever salary he chooses upon an employee's reinstatement.

Appellees argue that Article 11.4.3 was not in effect at the time that the reinstatements took place; Appellants vigorously contend that it was. We choose not to address this argument, however, because even assuming that Article 11.4.3 was in effect, it could not be read to support Appellants' argument. A grant of unfettered discretion to the Executive Director to authorize reinstatement salaries above what an employee was entitled to would not comport with the merit principle or the constitutional principle of "equal pay for equal work."

-17-

One of the underlying policies behind the merit principle is the constitutional principle of "equal pay for equal work." See Ortiz Ortiz v. Dept. of Treasury, 20 P.R. Offic. Trans. 229, 234 (P.R. 1987). The Puerto Rico Supreme Court has stated "that employee compensation is one of the most important areas to . . . expedite the application of the merit principle." Id. (internal quotation marks and citation omitted). If we accept Appellants' argument, Article 11.4.3's grant of discretion to the Executive Director to determine reinstatement salaries would undermine the principle of "equal pay for equal work" and the merit principle. It would allow an Executive Director to assign higher salaries to employees who, upon reinstatement, are performing the same tasks as other career employees. In other words, it would allow the Executive Director to assign higher pay for equal work. It would also allow the Executive Director to authorize salaries for employees at a level they could not have validly obtained by merit.

We note further that, in 1993, Cordero, who had been recently appointed PREPA's Executive Director, asked the Central Office of Personnel Administration ("OCAP")[7] to address the very issue before us: whether trust employees who were reinstated to career positions can be given the same salaries they were earning as trust employees due to Section 11.4.3. OCAP responded by stating that assigning reinstatement salaries equal to what the

---

[7] Appellees refer to OCAP in their brief by the acronym "COPA."

employees were earning at trust positions was inconsistent "with a sound public policy administration" and was of "questionable public morality." OCAP also noted that "all reinstatement transactions will result in a salary reduction since we are referring to two different levels of classification and compensation: one for the career service and another for the service of trust." The OCAP response also invited Cordero to seek an opinion from the Secretary of Justice, which Cordero did. In 1995, the Secretary of Justice issued an opinion stating that Section 11.4.3 gave the Executive Director discretion to assign reinstatement salaries "that correspond to said career positions, pursuant to the applicable scales of PREPA's Classification and Compensation Plain, and in keeping with a sound administrative policy and the constitutional principle of equal pay for equal work."

In short, several years before his actions in 2000, Cordero had been told by OCAP and the Secretary of Justice that assigning reinstatement salaries equal to an employee's trust position salary was inconsistent with the merit principle and sound administrative policy, and was of questionable morality. However, in 2000, Cordero proceeded to do just that: assign reinstatement salaries equal to an employee's trust position salary. Interestingly, Appellants, in arguing that the reinstatements with the higher salaries did not violate the electoral ban, rely heavily on a Normative Letter from OCAP -- the

same OCAP which in 1993 said that reinstating employees with the same salaries as they held in their trust positions was against sound administrative policy and the constitutional principle of "equal pay for equal work." Given these facts, we have no trouble concluding that reinstatement to a career position while maintaining the same salary from a trust position is a violation of Puerto Rico law and the merit principle.

In conclusion, while Appellants have a property interest in a career position equal to their last held career position, including "all salary benefits extended to the [career] position" while they were in their trust positions, P.R. Laws Ann. tit. 3, § 1350, they do not have a property interest in the higher salaries they received. They are therefore not entitled to procedural due process protections as to those higher salaries. Appellees did not violate Appellants' due process rights when they reduced Appellants' salaries to their appropriate levels.

## D. Politically-Motivated Harassment and Termination Claims

As we have already noted, the district court did not address claims made by some of the Appellants regarding political harassment, and in the case of one Appellant, termination on political grounds. However, in its order, the district court dismissed all of the Appellants' claims, including these politically-motivated harassment and termination claims.

Appellees raise three waiver arguments. First, they argue that Appellants have waived any argument on this issue because they did not raise it in their Third Motion for Reconsideration or their First or Second Motions to Supplement. We reject this argument for two reasons. First, Appellants clearly raised the issue in their Second Motion for Reconsideration. Second, although a party may file a motion for reconsideration, filing such a motion in no way obligates a party to bring up every possible reason for reconsideration or else waive the right on appeal to challenge any argument not brought up. Appellees cite to no case authority to back up this novel idea of waiver, nor are we aware of any.

Appellees next argue that Appellants failed to adequately raise this issue in their initial brief. We disagree. While Appellants did not devote a substantial amount of time to this issue, the issue does not require a substantial amount of discussion. Appellants adequately raised the issue in their brief.

Finally, citing Zanditon v. Feinstein, 849 F.2d 692, 702 (1st Cir. 1988), Appellees argue that Appellants waived the issue because they never filed an opposition to Appellees' motion for summary judgment on these politically-motivated harassment and termination claims. Instead, they filed a motion to dismiss Appellees' motion for summary judgment, arguing that Appellees' motion on this issue was filed too late. The district court never

ruled on this motion, but instead declared it moot after issuing its Opinion and Order. We reject Appellees' argument for two reasons. First, Appellants did in fact oppose the motion for summary judgment but did so by asking the court to dismiss the motion for being late. While it certainly would have been preferable for Appellants to also file an opposition to the motion for summary judgment, this does not change the fact that Appellants did oppose the motion in some form. Second, Appellants in their Second Motion for reconsideration raised the argument that they raise before us now. In Zanditon, we affirmed the grant of summary judgment where the party "neither filed a response to [the] motion for summary judgment, nor sought reconsideration by the district court after the judgment had been granted." Id. Because Appellants here sought reconsideration, they have not waived this issue.[8]

From the record it is clear that the district court granted summary judgment as to the politically-motivated harassment and termination claims without any analysis whatsoever. In fact, the district court's Opinion and Order never mentions the

---

[8] We wish to be clear as to what arguments Appellants have not waived. First, they have not waived the argument that the motion for summary judgment should have been dismissed for being untimely. Second, they have not waived the argument that the district court erred in granting summary judgment without giving any analysis whatsoever. Appellants are not making any arguments as to the substance of the motion for summary judgment, nor could they at this point.

politically-motivated harassment and termination claims, even in its recitation of the facts. We have previously remanded cases to the district court where "there is at least one significant legal issue, not squarely addressed by the district court[,] that remains unresolved." Alden, Inc. v. Alden Ins. Agency of Florida, Inc., 389 F.3d 21, 25 (1st Cir. 2004)(internal quotation marks omitted).

The procedural posture of this case also gives us pause. From the record it appears that Appellees' motion for summary judgment on the politically-motivated harassment and termination claims was filed one day after a deadline imposed by the district court, after the court had already granted two extensions of time to file the motion. Appellants asked the district court to dismiss the motion for summary judgment on the ground that it was late. The district court never ruled on the motion to dismiss Appellees' motion for summary judgment. Given the posture of this case, we think it would be unwise to "leapfrog[] to the merits." Id. (internal quotation marks and citation omitted). We therefore remand these claims to the district court for consideration of the issues not decided by that court as explained herein.

## E. Motions for Reconsideration

Lastly, we have considered the motions for reconsideration filed by the Appellants. We do not believe that the district court abused its discretion in denying the First or Third Motions (along with the two Motions to Supplement). We

therefore affirm the district court's decision as to these motions. However, the district court did abuse its discretion in denying the the Second Motion for Reconsideration -- which raised the fact that the district court had dismissed the politically-motivated harassment and termination claims without mentioning them in its Opinion and Order. Since we are remanding the claims to the district court for summary judgment purposes, our decision on this issue makes no difference to the outcome of this appeal.

### III. <u>Conclusion</u>

For the foregoing reasons, we affirm the district court's grant of summary judgment as to Appellants' due process claims. We vacate the district court's grant of summary judgment as to Appellants' politically-motivated harassment and termination claims and remand the case for proceedings consistent with this opinion.

**<u>Affirmed in part, vacated in part, and remanded</u>**. No costs are awarded.