# United States Court of Appeals
## For the First Circuit

No. 07-2739

ANTONIO COSTA-URENA, ET AL.,

Plaintiffs, Appellees,

v.

MILTON SEGARRA, ET AL.,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Howard, Ripple[*] and Selya,
Circuit Judges.

Antonio Sagardia De Jesus, Secretary of Justice, Commonwealth of Puerto Rico, Landrón & Vera, LLP., Eileen Landrón Guardiola and Eduardo A. Vera Ramirez, on brief for appellants.
     Marie Elsie López-Adames and González-López & López-Adames, on brief for appellees.

December 22, 2009

---

[*]Of the Seventh Circuit, sitting by designation.

**HOWARD**, **Circuit Judge**.  In 2001, Antonio Costa-Urena ("Costa-Urena"), Luis Jirau ("Jirau"), and Carlos Rueda ("Rueda") were terminated from career positions that they held with the Puerto Rico Tourism Company, an agency of the Commonwealth of Puerto Rico.  These terminations prompted them to sue various Commonwealth officials under 42 U.S.C. § 1983, claiming that their terminations violated both the First Amendment and the Due Process Clause of the Fourteenth Amendment.  Their spouses, also plaintiffs in the action, sought to recover derivatively for these violations under Article 1802 of the Puerto Rico Civil Code.  See P.R. Laws Ann. tit. 31, § 5141.  A jury found in favor of the plaintiffs, awarding them compensatory damages against defendant Milton Segarra, and the district court ordered additional relief against the defendant governor of Puerto Rico.

On appeal, Segarra, who was the former director of the Puerto Rico Tourism Company and who remains in the case in his individual capacity, and the governor, who is a defendant in his official capacity, launch a number of challenges to the judgments against them.  Most notably, they claim that the First Amendment judgment must be vacated because of erroneous jury instructions and that the procedural due process judgment must be reversed because the plaintiffs lacked a constitutionally protected property interest in their career positions.  Both claims hit the mark. Accordingly, we vacate the judgment in favor of the plaintiffs on

the First Amendment claim, remanding for a new trial on that claim, and we reverse the judgment on the procedural due process claim.

## I.

Some background helps to place the issues in perspective, and to the extent that facts are presented here, they are presented in the light most favorable to the jury's verdict. See Whitfield v. Melendez-Rivera, 431 F.3d 1, 3 (1st Cir. 2005). In Puerto Rico, state[1] employees fall generally into two categories: those who hold "career" positions and those who hold "trust" or "confidence" positions. See Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 3 n.1 (1st Cir. 2000). Trust employees are involved in "policy-making" or render direct services to particular government figures. P.R. Laws Ann. tit. 3, § 1465; see also Cruz-Gomez v. Rivera-Hernandez, 444 F.3d 29, 30 n.1 (1st Cir. 2006). They are generally of free selection and removal, meaning that, with limited exceptions which need not be catalogued here, they may be hired and fired at will. Cruz-Gomez, 444 F.3d at 30 n.1. Career employees, on the other hand, hold "permanent" positions. Maymi v. P.R. Ports Auth., 515 F.3d 20, 24 n.2 (1st Cir. 2008). They must be selected with reference to merit-based criteria, P.R. Laws Ann. tit. 3, § 1462b, and may only be removed from their positions for cause and

---

[1] Puerto Rico is treated as a state for the purposes of a § 1983 analysis. Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 n.6 (1st Cir. 2008).

after certain procedures are followed.  Id.  § 1462e; see also Cruz-Gomez, 444 F.3d at 30 n.1.

Career employees are entitled to the protections of the First and Fourteenth Amendments.  Rodriguez-Marin v. Rivera-Gonzalez, 438 F.3d 72, 39-80 (1st Cir. 2006) ("The First Amendment protects the right of public career employees . . . . to engage in political activities without fear of adverse employment actions.") (citation omitted); see also Colon-Santiago v. Rosario, 438 F.3d 101, 108 (1st Cir. 2006) (recognizing that career employees have a property interest in continued employment that is protected by the Due Process Clause of the Fourteenth Amendment).  Consistent with the First Amendment, Puerto Rico is prohibited from terminating career employees based on their political affiliation, see Maymi, 515 F.3d at 25.  Further, consistent with the Due Process Clause of the Fourteenth Amendment, the Commonwealth must afford career employees appropriate "process" before terminating them.  Borges Colon v. Roman-Abreu, 438 F.3d 1, 8-9 & n.3 (1st Cir. 2006).

As exemplified by the above-cited cases, these principles are sometimes put to the test when newly installed administrations terminate career employees who happen to march to a different political drumbeat.  Such actions, in turn, often prompt the terminated employees to claim political discrimination and to challenge the adequacy of pre-termination procedures.

-4-

That is more or less the situation presented here. At one point, each of the three primary plaintiffs held the career position of "Collections Officer" with the Puerto Rico Tourism Company ("Tourism Company" or "agency"). Rueda acquired this position in 1995, Jirau in 1996, and Costa-Urena in 1997. At all relevant times, each of the plaintiffs was also a member of the New Progressive Party. In 2000, the Popular Democratic Party was elected to power in Puerto Rico. Shortly after the installation of the new government, the plaintiffs were terminated from their jobs. The plaintiffs claim that the defendants terminated them because of their political affiliation. The defendants respond by saying that the plaintiffs were terminated not for political reasons but because they never lawfully held their positions as Collections Officers in the first place. Specifically, the defendants claim that the plaintiffs do not meet the educational pre-requisites for the Collections Officer position, namely, the requirement of a bachelor's degree from an accredited institution in either business administration or a related field. It is undisputed that the plaintiffs do not hold such degrees.

The roots of this particular dispute extend back to 1995, before any of the plaintiffs were hired to be Collections Officers. That year, the Tourism Company revised its "Classification Plan." This plan, among other things, sets out the primary responsibilities and employment requirements for positions in the

Tourism Company. As part of the revision process, the Tourism Company established certain minimum requirements for the career position of Collections Officer. These included the requirement that a Collections Officer possess a "Bachelor in Business Administration or related fields from an accredited institution." Despite the existence of the requirement, the Tourism Company presented the qualification as optional when it published the job announcement for the position of Collections Officer in 1995. The announcement noted: "The required academic preparation may be substituted by additional experience in the Collections area."

The three plaintiffs, each of whom at that time lawfully held another career position with Tourism, responded to this job announcement or a materially similar announcement. Although none of the plaintiffs held the requisite bachelor's degree in business administration or a related field, each was hired to be a Collections Officer because of "experience in the Collections area." At no point was the Classification Plan amended to be consistent with the job announcements or vice-versa.

Following the 2000 election, the Tourism Company came under new leadership, appointed by PDP governor Sila Maria Calderón. Not long after this transition in power, officials at the Tourism Company began reviewing personnel files. A review of these files indicated that each of the plaintiffs failed to meet the minimum requirements for the position of Collections Officer,

as set out in the relevant Classification Plan. This discovery set into motion a series of events: the plaintiffs were notified of their perceived lack of credentials; informal hearings were held; and the plaintiffs were terminated. Milton Segarra, the then-Executive Director of the Tourism Company, made and carried out this decision.

After unsuccessfully challenging their terminations in a post-termination administrative hearing, the plaintiffs filed suit in federal court under 42 U.S.C. § 1983, claiming that their dismissals violated the First Amendment because they were politically motivated and that the Commonwealth had denied them the procedural protections guaranteed by the Due Process Clause of the Fourteenth Amendment. The plaintiffs' spouses also brought a derivative tort action under Article 1802 of the Puerto Rico Civil Code. See P.R. Laws Ann. tit. 31, § 5141. The matter eventually proceeded to trial.

At the close of the plaintiffs' case, the defendants moved orally for judgment as a matter of law under Rule 50(a) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 50(a). The district court denied this motion. After some skirmishing between the defendants and the court over jury instructions, the case was submitted to the jury. The jury found for the plaintiffs on both the First Amendment claim and the procedural due process claim, awarding damages to the plaintiffs and their spouses. At

this point, the defendants filed a renewed motion for judgment as a matter of law under Rule 50(b) and an alternative motion for a new trial. See Fed. R. Civ. P. 50(b), 59(a). The district court summarily denied these motions. This appeal ensued.

## II.

The defendants claim that the district court committed a host of errors during the proceedings below. We address each of their arguments in turn.

### A. First Amendment claim

The defendants argue that they are entitled to a new trial on the plaintiffs' First Amendment/political discrimination claim because the district court's instruction on the political discrimination claim was incorrect as a matter of law. This claim of instructional error is reviewed de novo. SEC v. Happ, 392 F.3d 12, 28 (1st Cir. 2004).

A jury instruction is erroneous if it is misleading, confusing, or incorrect as a matter of law. Davignon v. Clemmey, 322 F.3d 1, 9 (1st Cir. 2003). If the instruction is erroneous, a new trial will be ordered if "the error, based on the entire record, was prejudicial." Romano v. U-Haul Int'l, 233 F.3d 655, 665 (1st Cir. 2000) (citation omitted). Put differently, a new

trial will be unnecessary if the error was harmless.  Id.; see also

Fed. R. Civ. P. 61.[2]

Before examining the challenged instruction, we identify

the relevant ground rules.  As alluded to above, the First

Amendment prohibits the dismissal of a career employee based on

political affiliation.  Maymi, 515 F.3d at 25.[3]  When a terminated

employee claims that he or she was dismissed in violation of the

First Amendment, the Supreme Court's decision in Mt. Healthy City

Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977), governs the

analysis.  Under Mt. Healthy, the plaintiff must initially

introduce evidence sufficient to indicate that a constitutionally

protected activity or status was a "substantial or motivating

factor" in the termination decision.  Borges Colon, 438 F.3d at 15

(noting that this evidence may be direct or circumstantial in

nature).  If a plaintiff establishes this prima facie case, the

burden then shifts to the employer, who at this point may assert

what is commonly referred to as a "Mt. Healthy defense."

Rodriguez-Marin v. Rivera-Gonzalez, 438 F.3d 72, 81 (1st Cir.

2006).  To establish such a defense, the employer must prove, by a

_____

[2] This "harmless error" standard applies where, as here, a
party has properly objected to the court's instruction at trial.
Davignon, 322 F.3d at 9.

[3] This may be the case even if the employee acquired the
career position in contravention of state law.  See Santiago-Negron
v. Castro-Davila, 865 F.2d 431, 436 (1st Cir. 1989).  Nevertheless,
such a fact, as we will discuss below, has relevance in the
procedural due process inquiry.

-9-

preponderance of the evidence, that it would have made the termination decision regardless of the employee's protected activity or status. Gonzalez-Pina v. Guillermo Rodriquez, 407 F.3d 425, 431-32 (1st Cir. 2005) (citing Mt. Healthy, 429 U.S. at 287).

As has been noted in the past, Mt. Healthy's burden shifting framework tends to obscure the following principle: showing that a protected activity or status was a "substantial or motivating factor" in the termination decision, that is, that the protected activity or status was an impetus for, or moved the employer towards, the termination decision, may not be enough for the plaintiff to succeed. The employer can defeat liability by establishing that it would have made the same termination decision anyway, without regard to the plaintiff's protected activity or status. Mercado-Alicea v. P.R. Tourism Co., 396 F.3d 46, 51 (1st Cir. 2005) (recognizing that the First Amendment analysis must distinguish between a result caused by a constitutional violation and one not so caused). Put differently, the employer must be given a chance to establish that the plaintiff's activity or status was not the "proximate cause" of the termination.

The district court's instruction did not adequately convey this principle and was thus incorrect. The instruction reads:

> If you find that the defendants' intervention in dismissing career employees in violation of the principles outlined in these instructions was, in fact, made in retaliation

-10-

for the exercise of the Constitutional right of free speech, which includes the liberty of political affiliation, then you must find for the plaintiffs.

If, on the other hand, you find that the personnel actions <u>had nothing to do with the plaintiff's political preferences</u>, then you must find for the defendants.

(emphasis added).

The problem lies with the highlighted "had nothing to do with" language. Under <u>Mt. Healthy</u>, even if the protected activity or status (here, political affiliation) "had something to do with" the termination decision, it would not necessarily result in a victory for the plaintiffs. If the defendant/employer were able to satisfy the jury that it would have fired the plaintiffs regardless of political affiliation, then the defendant would be entitled to a verdict in its favor. The instruction as worded, however, signaled to the jury that if it found that the plaintiff's political affiliation "had something to do" with the termination decision, the jury would be precluded from finding for the defendants. The instruction thus prevented the jury from considering whether the defendants had presented a valid <u>Mt. Healthy</u> defense.

Having concluded that the instruction was erroneous, we must also consider whether the error was nevertheless harmless. <u>Cigna Ins. Co.</u> v. <u>Oy Saunatec, Ltd.</u>, 241 F.3d 1, 8 (1st Cir. 2001). The plaintiffs argue that any instructional error was harmless because the defendants were not entitled to present a <u>Mt. Healthy</u>

-11-

defense in the first place.  The defense, they say, was exposed as pretextual at trial, as the plaintiffs introduced evidence that two other Collections Officers, Luis Luciano and Jose Bayon, kept their Collections Officer jobs despite not having the requisite degree.

The argument overreaches.  Although the defendants could not fully explain why they permitted Bayon to keep his job, there was evidence that the 1995 Classification Plan did not apply to Luciano because the Tourism Company hired him in 1985, well before the plan was in place.  And given that the defendants consistently maintained at trial that they terminated the plaintiffs for an identifiable, non-discriminatory reason, we think the evidence was sufficiently mixed that it would allow (though not compel) a reasonable, properly instructed jury to find that the defendants had established a Mt. Healthy defense.  As a result, we must vacate the judgment on the First Amendment claim and remand for a new trial on this claim.

## B.  Procedural due process claim

The defendants also attack the district court's handling of the plaintiffs' procedural due process claim.  They first argue that the claim should never have been submitted to the jury, but rather decided by the court as a matter of law.  See Fed. R. Civ. P. 50(a), (b).  Alternatively, the defendants argue that they are entitled to a new trial on the procedural due process claim because of an error in the court's jury instructions.

-12-

We review de novo the denial of a renewed motion for judgment as a matter of law under Rule 50(b), viewing the evidence in the light most favorable to the nonmoving party, here, the plaintiffs. Hatfield-Bermudez v. Aldanondo-Rivera, 496 F.3d 51, 61 (1st Cir. 2007).

A person is only entitled to procedural due process if she can establish that the government deprived her of a constitutionally protected interest. Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). Here, the plaintiffs claim a constitutionally protected property interest in continued public employment, specifically, in their positions as Collections Officers. See Gonzalez-De Blasini v. Family Dep't, 377 F.3d 81, 86 (1st Cir. 2004) ("[A] public employee who possesses a property interest in continued employment cannot be discharged without due process of law."). The defendants argue primarily that the plaintiffs have no protected interest in their positions as Collections Officers.[4]

---

[4] On appeal, the defendants also argue that, even if the plaintiffs did have a protected property interest in their jobs as Collections Officers, the Commonwealth nevertheless provided them with all the process they were due.

This argument is unavailable. In their only Rule 50(a) motion, which they made orally at the close of the plaintiffs' case, the defendants never argued that the plaintiffs received adequate process before their termination. It is well-established that arguments not made in a motion for judgment as a matter of law

-13-

Whether the plaintiffs had a protected property interest in their jobs is a question of state law. Rosario-Torres v. Hernandez-Colon, 889 F.2d 314, 319 (1st Cir. 1989) (en banc) ("The sufficiency of a claim of entitlement to a property interest in public employment must be measured by, and decided with reference to, local law.") (citing Bishop v. Wood, 426 U.S. 341, 344 (1976)); see also Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 53 (1st Cir. 1990) ("Constitutionally protected property interests originate in extra-constitutional sources"). Under Puerto Rico law, the positions held by the plaintiffs are "career" positions. As a general rule, those who lawfully hold such positions have a protected property interest in continued employment in those positions. Figueroa-Serrano, 221 F.3d at 6.

The key word is "lawfully." To possess constitutionally protected property interests in their career positions, the plaintiffs must have valid claims to those positions. Id. An employee's claim is not valid if the hire contravened Commonwealth laws and regulations, which include the Puerto Rico Personnel Act and agency regulations promulgated under that Act. Kauffman v. Puerto Rico Tel. Co., 841 F.2d 1169, 1173 (1st Cir. 1988); see also

_____

under Rule 50(a) cannot then be advanced in a renewed motion for judgment as a matter of law under Rule 50(b). See Correa v. Hosp. San Francisco, 69 F.3d 1184, 1196 (1st Cir. 1995) ("As the name implies, a renewed motion for judgment as a matter of law under Fed. R. Civ. P. 50(b) is bounded by the movant's earlier Rule 50(a) motion.").

-14-

Vazquez-Valentin v. Santiago-Diaz, 459 F.3d 144, 149 (1st Cir. 2006) (recognizing that hirings made "in violation of Commonwealth laws and regulations normally are null and void ab initio") (citation omitted)); Correa-Martinez, 903 F.2d at 54 ("We have regularly held that, under Puerto Rico law, government employees hired illegally to permanent or career positions are neither invested with property interests in continued employment nor entitled to the due process protections which inure to their legally hired counterparts.").

Here, the defendants contend that the plaintiffs did not lawfully hold their positions as Collections Officers because the Tourism Company hired them to those positions in contravention of its own Classification Plan. See De Feliciano v. De Jesus, 873 F.2d 447, 454 (1st Cir. 1989). That plan, promulgated under the Personnel Act, required each Collections Officer to hold a bachelor's degree in business administration or a related field.[5] Because they lacked any property interest in their Collections Officer positions, the argument runs, the plaintiffs were not entitled to any process with respect to the loss of those positions.[6]

---

[5] The plaintiffs assert that the plan was not public, but they do not contest that the plan was both validly enacted and binding.

[6] The defendants present this argument in two ways. They argue that the evidence presented a trial, which included the relevant Classification Plan, established that each of the plaintiffs failed to qualify for the Collections Officer position.

We agree. The Classification Plan clearly required each Collections Officer to hold a bachelor's degree in a certain field. The plaintiffs candidly admit that they do not hold such degrees. Under circumstances such as these, where the plaintiffs were recruited and hired to career positions in contravention of regulations promulgated under the Personnel Act, the plaintiffs cannot develop a protected property interest in their career positions. See De Feliciano, 873 F.2d at 452-55; see also Correa-Martinez, 903 F.2d at 53-55.

This result may seem unfair. After all, the agency must bear some fault in this story. It recruited the plaintiffs in plain contravention of its own Classification Plan. But, as De Feliciano illustrates, "fault" is not a relevant factor in the due process inquiry. 873 F.2d at 454. In that case, the plaintiffs argued that they were entitled to procedural due process even if they had been hired in contravention of state law because, "any failure to abide by the rules when they were hired was not their fault, but the fault of the [state agency]." Id. In rejecting this argument, we observed, "[T]he legal question has nothing to do with fault. It has to do with whether or not Puerto Rico law gave

They also rely on the doctrine of collateral estoppel, arguing that the plaintiffs failed to appeal an administrative decision rendered against them, and that facts established in this proceeding definitively doom their claim. We need not venture into the thicket of the collateral estoppel doctrine, as the record evidence is sufficient to establish the lack of a protected property interest.

-16-

the plaintiffs a sufficient 'property' interest in their jobs as to invoke the protection of the Fourteenth Amendment." Id. Such reasoning applies with equal force here.

We note that, although the plaintiffs were precluded from developing property interests in their specific positions as Collections Officers, they still may have held (at the time of their terminations) constitutionally protected property interests in their career employment with the Tourism Company. After all, each of the primary plaintiffs in this case held another career position before being hired to his Collections Officer position.

Nevertheless, the question of whether the plaintiffs held a protected property interest in other career positions was never squarely before the jury. The district court's instruction focused on procedures due when the defendants took away the Collections Officer positions. Moreover, throughout the proceedings below, the plaintiffs plainly sought to establish a protected property interest in their positions as Collections Officers, not in some other career position. In their complaint, for example, they requested reinstatement only to their positions as Collections Officers. Conversely, the plaintiffs failed to make the requisite efforts to establish a protected interest in other career employment with the Tourism Company. For example, they did not introduce evidence of the wages that would have earned in other career position had they not been terminated outright from agency

-17-

employ. Nor, for aught that it appears, did the plaintiffs request jury instructions that would have notified the jury that they were also claiming property interests in career employment other than as Collections Officers. Under these circumstances, the jury verdict in favor of the plaintiffs on the procedural due process claim is inextricably tied to the Collections Officer positions. Accordingly, it cannot stand.

Because we reverse the judgment in favor of the plaintiffs on the procedural due process claim, there is no need to address the defendants' alternative argument claiming instructional error.

## C. **Qualified Immunity**

Segarra, who was sued in his personal capacity, argues that he is entitled to qualified immunity with respect to the plaintiffs' First Amendment claim. "The qualified immunity doctrine provides defendant public officials an immunity from suit and not a mere defense to liability." Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009); see also Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (noting that qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation"). Accordingly, were we to find that Segarra deserves qualified immunity in this case, he would be spared the crucible of a new trial on the plaintiffs' First Amendment claim.

A two-part test governs the qualified immunity question. Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009); Maldonado, 568 F.3d at 268-69. A court should deny a defendant qualified immunity if: (1) the facts a plaintiff has either alleged or shown establish a violation of a constitutional right; and (2) the constitutional right at issue was "clearly established" at the time of the defendant's alleged misconduct. Pearson, 129 S. Ct. at 815; see also Maldonado, 568 F.3d at 269. A right is "clearly established" if the contours of the right are sufficiently clear such that "a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Put another way, a right is clearly established if, at the time the defendant acted, he was on clear notice that what he was doing was unconstitutional. Maldonado, 568 F.3d at 269 (citing Hope v. Pelzer, 536 U.S. 730, 741 (2002)).

We may be brief. The plaintiffs have alleged facts that, if found by a jury to be true, would establish that the defendants violated the plaintiffs' First Amendment rights by terminating them based on their political affiliation. Further, it is clearly-established, and was at the time of the events in question, that terminating a non-policy-making employee based on political affiliation violates the First Amendment even if a valid alternative ground exists for the termination. See Sanchez-Lopez v. Fuentes-Pujuols, 375 F.3d 121, 132-33 (1st Cir. 2004); Santiago-

-19-

Negron, 865 F.2d at 436. Accordingly, Segarra is not entitled to qualified immunity.

Segarra's claim that the plaintiffs were terminated because they held their positions unlawfully fails to alter this analysis. The reason for the plaintiffs' termination is a disputed issue of material fact. Under such circumstances, a grant of qualified immunity is inappropriate. See Roure v. Hernandez Colon, 824 F.2d 139, 141 (1st Cir. 1987).

### D. **Damages and other remedies**

The defendants challenge the award of damages to the plaintiffs' spouses. They also challenge the reinstatement orders issued by the district court. We address these challenges in turn.

### 1. Damages award to spouses

The jury awarded the plaintiffs' spouses the following amounts: (1) Costa-Urena's spouse, $43,000; (2) Jirau's spouse, $58,000; (3) Rueda's spouse, $54,000. The defendants argue that the district court's errors may have led the jury inappropriately to award these damages under § 1983, a statute under which the spouses of plaintiffs are prohibited from recovering as derivative plaintiffs. In particular, they complain about the court's instructions to the jury and the wording of the verdict form submitted to, and used by, the jury. Because the defendants failed

to lodge the requisite objections before the district court, our review is for plain error only. Davignon, 322 F.3d at 9.[7]

Although we need not get into specifics, the defendants present a losing argument. Nevertheless, a far more persuasive argument exists for vacating the spousal awards. In the past, we have explained that a cause of action under Article 1802 "is wholly derivative and, thus, its viability is contingent upon the viability of the underlying employment discrimination claim." See Hernandez v. Phillip Morris USA, Inc., 486 F.3d 1, 12-13 (1st Cir. 2008); see also Marcano-Rivera v. Pueblo Int'l, Inc., 232 F.3d 245, 258 n.7 (1st Cir. 2000). Although the underlying employment discrimination claims in those cases were not political discrimination claims, we fail to see why the rule would be any different with respect to such discrimination claims. See Torres-Rivera v. Calderon-Serra, 412 F.3d 205, 209 & n.5 (1st Cir. 2005). And here, given the infirmity of the jury's verdict on the underlying political discrimination claim, the spousal awards are plainly inappropriate. To be sure, the defendants, who are the appellants in this case, failed to raise this precise argument in their brief to this court, thus raising the spectre of waiver. See

---

[7] "[T]he party claiming plain error must show (1) an error, (2) that is plain (i.e., obvious and clear under current law) (3) that is likely to alter the outcome, and (4) that is sufficiently fundamental to threaten the fairness or integrity or public reputation of the judicial process." Colon-Millin v. Sears Roebuck de P.R., Inc., 455 F.3d 30, 41 (1st Cir. 2006) (internal quotations omitted).

-21-

<u>Sandstrom</u> v. <u>ChemLawn Corp.</u>, 904 F.2d 83, 87 (1st Cir. 1990).  But "in certain circumstances we have the discretion to overlook waiver by inadequate argument," <u>Smith</u> v. <u>Robertshaw Controls Co.</u>, 410 F.3d 29, 37 n.9 (1st Cir. 2005) (quoting <u>United States</u> v. <u>Rodriguez-Marrero</u>, 390 F.3d 1, 18 (1st Cir. 2004)), and, to the extent there was waiver here, it makes sense to overlook it.  The appellants did challenge the validity of the spousal awards, albeit on a different ground, and clearly challenged the underlying political discrimination claims on which those awards were based.  And permitting the spousal awards to stand when we are vacating the verdicts on which they are based makes little sense.  Accordingly, we vacate the spousal awards as well.  We do so, of course, without prejudice to the derivative claims themselves and to the prospect of a new trial.

## 2.  Reinstatement

After entering judgment for the plaintiffs on the First Amendment claim, the district court ordered that the plaintiffs be reinstated to their positions as Collections Officers.  Because we vacate the judgment on that claim, we must also vacate the district court's reinstatement order.  Should another jury find in favor of the plaintiffs on the First Amendment claim, the question of reinstatement remains open for the district court to consider.  <u>See</u> <u>Chungchi Che</u> v. <u>Mass. Bay Transp. Auth.</u>, 342 F.3d 31, 42 (1st Cir.

2003).  That said, given the particular circumstances of this case, we offer some guidance on the reinstatement issue.

Upon a finding of unlawful political discrimination, the district court may, in its discretion, order that the defendants reinstate the plaintiffs to their positions as Collections Officers.  This is the case even though the plaintiffs did not acquire those positions lawfully.  Rosario-Torres, 889 F.2d at 320 (noting that for "persons hired to career positions in violation of the Personnel Act and thereafter cashiered because of party affiliation . . . one of the remedies available for a political discharge in violation of first amendment rights is reappointment.") (internal quotations omitted).

This is not to say that reinstatement is an inevitable remedy or even an advisable one.  Id. at 321.  Among the factors a court should consider when evaluating reinstatement is whether the employee was hired in violation of local law.  Hiraldo-Cancel v. Aponte, 925 F.2d 10, 14 (1st Cir. 1991) ("Although plaintiffs' ineligibility for appointment would neither suspend their first amendment rights nor undercut their entitlement to legal relief under section 1983, ineligibility considerations do bear on the appropriateness of the equitable relief of reinstatement.").  In such a case, there are obvious reasons why it would be imprudent to reinstate the employee to a previous, unlawfully held position. See id.

-23-

Finally, we note that the defendants argue that the district court is incapable of ordering reinstatement in this case under any circumstances. This is so, they claim, because defendant Segarra is not currently in this case in an official capacity. The governor of Puerto Rico, however, does remain a party to this case in an official capacity. In any event, because the reinstatement question may become moot after additional proceedings, there is no need to discuss this issue further at this juncture.

### III.

The judgment for the plaintiffs on the First Amendment claim is **vacated** and the judgment for the plaintiffs on the procedural due process claim is **reversed**. The order of reinstatement is **stricken**, without prejudice. The judgment on the spouses' derivative claim under Article 1802 is **vacated**. The case is remanded for proceedings consistent with this opinion. The parties shall bear their own costs incurred in this appeal.

**So ordered**.