**Elba FALTO DE ROMAN, Plaintiff,**

**v.**

**MUNICIPAL GOVERNMENT OF MAYAGUEZ, et al.,
Defendants.**

**Civil No. 12–1011 (BJM)**

United States District Court,
D. Puerto Rico.

Signed 08/03/2016

Israel Roldan–Gonzalez, Aguadilla, PR, for Plaintiff.

Claudio Aliff–Ortiz, Eliezer Aldarondo–Ortiz, Eliezer Alberto Aldarondo–Lopez, Aldarondo & Lopez Bras, PSC, Guaynabo, PR, Yadhira Ramirez–Toro, Jaime J. Zampierollo–Vila, Department of Justice Commonwealth of Puerto Rico, San Juan, PR, for Defendants.

## OPINION AND ORDER

BRUCE J. McGIVERIN, United States Magistrate Judge

Alleging a deprivation of due process in her removal from a career position, Elba Falto de Roman ("Falto") brought a Section 1983 action against the Municipality of Mayaguez (the "Municipality"); Jose Guillermo Rodriguez, the mayor of the Municipality (the "mayor"); and members of the Head Start Program's governing board [1] (the "Board") and policy council [2] (the "Policy Council"). Am. Compl., Docket No. 5. Falto also brought state law and Title VII claims, but only the due process claim survived summary judgment. Docket No. 109. At that stage, all defendants were denied qualified immunity. *Id.* After a successful interlocutory appeal, the Board and Policy Council renew their request for qualified immunity on a ground previously raised but not addressed. Docket Nos. 151, 157, 168. Falto opposed. Docket No. 160. The case is before me on consent of the parties. Docket No. 40.

For the reasons set forth below, the motion for qualified immunity is **GRANTED.**

## BACKGROUND

Falto was a career employee of the Municipality and the director of the Municipality's Head Start Program ("Program"). Docket No. 109 at 2. The Program's director position (the "director position") is a career position. Docket No. 72–7. In December 2010, the U.S. Department of Health and Human Services ("HHS") re-

---

1. Luis Oliveras, Elena Martinez, Luis Ojeda, Carlos Gonzalez, Efrain De Jesus, Lisaira Diaz Nadal, and other unnamed individuals.

2. Luis Balaguer, Elida Caraballo, Francisco Figueroa, Lourdes Feliciano, Nitzia Lamberty, Luis Ramos, and other unnamed individuals.

viewed the Municipality's Program and issued a very negative report. Docket No. 151 at 4. In July 2011, the Board asked Falto whether the issues identified by the HHS report were being addressed and instructed her to respond within 24 hours. *Id.* Falto responded a month later; complained about the short deadline; claimed that the Board's request was "an act of harassment, persecution, and disrespect"; and claimed that she had already provided the requested information. *Id.*

On September 9, 2011, the Program's Policy Council voted to remove Falto from the director position and noted that the Board had previously made the same decision. Docket No. 72–9 at 1. The Policy Council also noted that the decision to remove Falto would be effective as of September 16. *Id.* On September 12, in a letter titled "recommendation for dismissal," the Board recommended to the mayor that Falto be removed from the director position, informed the mayor that both the Board and Policy Council had voted to dismiss Falto from the position, and asked the mayor that the decision be effective as of September 16. Docket No. 72–10 at 1, 3. Falto was not dismissed from the director position on September 16. Rather, in a letter dated September 20, the mayor informed Falto that he had "adopted" the decision of the Board and Policy Council and that she would be removed from the director position as of October 5. Docket No. 72–8 at 1. Falto was removed from the Municipality's payroll in early October 2011. Docket No. 72–23.

## DISCUSSION

The Board and Policy Council contend that Falto lacked a constitutionally protected interest in the director position and that they are entitled to qualified immunity.

## I. Constitutionally Protected Interest

 A person is entitled to procedural due process only if "she can establish that the government deprived her of a constitutionally protected interest." *Costa–Urena v. Segarra*, 590 F.3d 18, 26 (1st Cir. 2009) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). The U.S. Constitution "does not create property interests," *Soto–Padro v. Pub. Bldgs. Auth.*, 675 F.3d 1, 8 (1st Cir. 2012), and thus whether the plaintiff had a protected property interest in her job "is a question of state law." *Segarra*, 590 F.3d at 27. Public employees in Puerto Rico fall into two general categories: (1) those holding "trust" or "confidence" positions; and (2) "career" employees, who hold "permanent" positions, are hired based on merit, and are removable only for cause after certain procedures are followed. *Id.* Career employees "have a property interest in continued employment that is protected by the Due Process Clause of the Fourteenth Amendment." *Id.* (citing *Colon–Santiago v. Rosario*, 438 F.3d 101, 108 (1st Cir. 2006)).

 In this case, it is undisputed that Falto was a "career" employee and that the position she held was a career position. In light of these undisputed facts, the Board and Policy Council contend that while Falto had a "protected interest in continued employment with the Municipality," this interest "does not extend over a particular position with the Municipality." Docket No. 157 at 4. Accordingly—they argue—"removing or requesting [Falto's] removal from her position of director of the Head Start Program does not implicate a deprivation of a protected property interest." *Id.*

 In support of their theory, the Board and Policy Council chiefly rely on the well-settled proposition that Puerto Rico law protects a career employee's interest in continued employment, not the

particular functions of his or her job. *Id.;* *Rojas–Velazquez v. Figueroa–Sancha,* 676 F.3d 206, 212 (1st Cir. 2012) ("Puerto Rico law is pellucid: a public employee may have a property interest in his continued employment, ... but not in the particular functions of his job") (internal citations omitted) (collecting cases). But Falto correctly retorts that because she was taken off the payroll and all of her job functions as the Program's director were extinguished—not merely reduced or altered—these cases are inapposite to determine the precise property interest she had. Docket No. 160 at 8–10; *see Torres–Martinez v. P.R. Dep't of Corr.,* 485 F.3d 19, 24 (1st Cir. 2007) ("Torres does not claim to have been deprived of state employment, her title, or her salary; she claims only to have been deprived of duties pertaining to her position.").

Turning to that specific question, *Segarra* instructs that Falto had a constitutionally protected interest in her specific position as director of the Program. 590 F.3d at 26–28. In that case, each plaintiff was a career employee who held the position of "Collection Officer" in the Puerto Rico Tourism Company ("Tourism Company"), an agency of the Commonwealth of Puerto Rico. *Id.* at 22. The plaintiffs were terminated from the Tourism Company after an election, and they argued that their termination violated the First Amendment and procedural due process. *Id.* With respect to the due process claim, plaintiffs argued that they had a protected property interest "in their positions as Collection Officers," while defendants argued "primarily" that they had no such interest. *Id.* at 26.

The First Circuit ruled that the "positions held by the plaintiffs [were] 'career' positions" under Puerto Rico law and that, as a "general rule, those who lawfully hold such positions have a protected property interest in continued employment *in those*

*positions." Id.* at 27 (emphasis added) (citing *Figueroa–Serrano v. Ramos–Alverio,* 221 F.3d 1, 6 (1st Cir. 2000)). And while the due process claims ultimately foundered because the plaintiffs did not *lawfully* hold their positions as Collections Officers, the *Segarra* court made a critical distinction that is instructive in this case: "although the plaintiffs were precluded from developing property interests in their specific positions as Collections Officers, they still may have held (at the time of their terminations) constitutionally protected property interests in their career employment with the Tourism Company." *Id.* at 27–28. In light of this distinction, and because the plaintiffs in *Segarra* sought "to establish a protected property interest in their positions as Collections Officers, not in some other career position," the court reversed a jury verdict that was "inextricably tied to the Collections Officer positions." *Id.* at 28.

Falto's amended complaint was quite clear as to the relief she sought: "to be reinstated in the position that she held as Director of the Head–Start Program for the City of Mayaguez before she was illegally dismissed." Am. Compl. at 2 ¶ 2, 11 ¶ 56. And though inartfully pleaded, the amended complaint also sufficiently alleged that she had a "property interest ... in her continued employment, in her position with the" Municipality. Am. Compl. at 3 ¶ 13. At the summary judgment stage, too, Falto argued that she "had a property interest in the position she held as Director of the Head Start Program in the Municipal[ ] Government of Mayaguez." Docket No. 72 at 5. In light of the foregoing, Falto has maintained throughout the proceedings in this court that she had a constitutionally protected interest in her position as the Program's director, not just in continued employment with the Municipality. And because it is undisputed that Falto was a public employee who held a

career position, *Segarra* dictates that Falto had a constitutionally protected interest in her specific position as the Program's director. 590 F.3d at 26–28.

To be sure, in *Soto–Padro*, the First Circuit rejected a public employee's argument that a " 'sham' reorganization left him in a new position (Technical Services Supervisor) with fewer duties and a smaller pay scale than his old post (Field Operations Supervisor)." 675 F.3d at 8. The *Soto–Padro* court reasoned that the employee's procedural due process claim failed for two reasons: (1) the employee had a constitutionally protected interest in continued employment, not the particular functions of his job; and (2) the employee never cited "a Puerto Rico source showing that he had a protectable property interest in his old pay scale." *Id.* Because Falto lost *all* her job duties when she was removed from the director position on October 5, 2011, was entirely removed from the Municipality's payroll in early October 2011, and was not reassigned to any another position with reduced or similar job functions, this case parallels the circumstances in *Segarra* more so than those in *Soto-Padro. Compare Segarra*, 590 F.3d at 26–28, *with Soto–Padro*, 675 F.3d at 8. Moreover, as *Figueroa–Serrano* explained, Puerto Rico's "Autonomous Municipalities Act mandates that career employees 'shall be entitled to permanent status and may only be *removed from their positions* for just cause after due filing of charges.' " 221 F.3d at 6 (emphasis added) (citing P.R. Laws Ann. tit. 21, § 4554(b)). Thus, Falto had a constitutionally protected interest in her specific position as the director of the Program, not just in "some other career position" that could possibly have been available at the Municipality. *See Segarra*, 590 F.3d at 28.

## II. Qualified Immunity

 The Board and Policy Council next contend that they are entitled to qualified immunity even if Falto was deprived of a constitutionally protected interest. The qualified immunity doctrine "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The doctrine "protects 'all but the plainly incompetent or those who knowingly violate the law.' " *MacDonald v. Town of Eastham*, 745 F.3d 8, 11 (1st Cir. 2014) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)); *see also Plumhoff v. Rickard*, —— U.S. ——, 134 S.Ct. 2012, 2023, 188 L.Ed.2d 1056 (2014) (then-existing precedent " 'must have placed the statutory or constitutional question ... beyond debate.' ") (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)). But the doctrine has limits: it does "not shield public officials who, from an objective standpoint, should have known that their conduct was unlawful." *MacDonald*, 745 F.3d at 11 (quoting *Haley v. City of Bos.*, 657 F.3d 39, 47 (1st Cir. 2011) (internal quotation marks omitted)).

. When "a defendant invokes qualified immunity, the burden is on the plaintiff to show the inapplicability of the defense." *Rivera–Corraliza v. Morales*, 794 F.3d 208, 215 (1st Cir. 2015) (citing *Quintero de Quintero v. Aponte–Roque*, 974 F.2d 226, 228 (1st Cir. 1992)). To do so, the plaintiff must clear two hurdles: she must show that (1) "defendants violated a statutory or constitutional right" and that (2) "the right was clearly established at the time." *Morales*, 794 F.3d at 214 ("If plain-

tiffs stumble at either step," which can be analyzed in any order, the "due-process claims go kaput"). "The second prong, in turn, has two parts: (a) whether the legal contours of the right in question were sufficiently clear that a reasonable official would have understood that what he was doing violated that right, and (b) whether the particular factual violation in question would have been clear to a reasonable official." *Diaz–Bigio v. Santini*, 652 F.3d 45, 50 (1st Cir. 2011).

To meet the requisite burden, "[t]he clearly-established step requires plaintiffs to identify controlling authority or a robust consensus of persuasive authority such that any reasonable official in the defendant's position would have known that the challenged conduct is illegal in the particular circumstances that he or she faced—then-existing precedent, in other words, must have placed the statutory or constitutional question . . . beyond debate." *Morales*, 794 F.3d at 214–15 (internal quotations omitted). And though defendants can "be on notice that their conduct violates established law even in novel factual circumstances," *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), government officers are entitled to qualified immunity if " 'officers of reasonable competence could disagree' on the lawfulness of the action." *Santini*, 652 F.3d at 51 (quoting *Malley*, 475 U.S. at 341, 106 S.Ct. 1092).

In this case, the Board and Policy Council have invoked qualified immunity, and Falto has failed to establish that they are not shielded from liability under that doctrine. Under federal law, the Board "has the responsibility of 'approving personnel policies and procedures, including policies and procedures regarding the . . . . termination of the . . . Head Start Director.' " *Roman v. Oliveras*, 637 Fed. Appx. 616, 617 (1st Cir. 2016) (quoting 42

U.S.C. § 9837(c)(1)(E)(iv)(IX)). And the Policy Council similarly "has the responsibility to 'approve and submit to the governing body decisions about . . . . Program personnel policies and decisions regarding the employment of program staff.' " *Roman*, 637 Fed.Appx. at 617 (quoting 42 U.S.C. § 9837(c)(2)(D)(vi)). The mayor, on the other hand, is the government official "ultimately responsible for employment decisions of the municipality." *Rosaura Bldg. Corp. v. Municipality of Mayaguez*, 778 F.3d 55, 62 (1st Cir. 2015).

In light of the respective functions of the Board, the Policy Council, and the mayor, the Board and Policy Council contend that nothing in the record suggests that they knew or should have known that the mayor—who was ultimately responsible for making the Municipality's employment decisions—would act on their recommended decision to remove Falto from the director position without first affording due process. Docket No. 157 at 9. A review of the record evidence supports the position taken by the Board and Policy Council, and Falto does not identify "material facts" that bear on this particular "issue of qualified immunity." *Castro–Aponte v. Ligia–Rubero*, 953 F.2d 1429, 1430 (1st Cir. 1992).

The record reveals that on September 12, 2011, the Board recommended to the mayor that Falto be dismissed from the director position. In the September 12 letter, the Board also informed the mayor that the Policy Council and Board had voted for that decision and that the decision should be effective as of September 16. The mayor did not dismiss Falto from the director position on that date. Rather, in a letter dated September 20, the mayor informed Falto that he had "adopted" the decision taken by the Board and Policy Council and that she would be removed from the director position as of October 5.

Under these circumstances, the mayor—who was the ultimate decision maker—could have given Falto a notice and hearing in the interim time period between the Board's recommendation to remove her and the mayor's ultimate decision to do so. *See Newman v. Burgin*, 930 F.2d 955, 961 (1st Cir. 1991) (due process "simply requires that a private person have a basically fair opportunity to convince the *decision maker*, by presenting proofs and arguments and replies to the arguments of others.") (emphasis in original). And Falto has not identified material facts that show the Board and Policy Council knew or should have known that the mayor would not do so. *See Morales*, 794 F.3d at 215 ("the burden is on the plaintiff to show the inapplicability of the defense."); *Castro-Aponte*, 953 F.2d at 1430 (qualified immunity granted where "no material facts were alleged by the plaintiff which bear on the issue of qualified immunity").

What is more, Falto did not "identify controlling authority or a robust consensus of persuasive authority" to show "that any reasonable official in the" position of the Board and Policy Council "would have known that" recommending the dismissal of the Program director without first affording a notice and hearing would violate a constitutionally protected property interest. *Morales*, 794 F.3d at 214–15. Falto's failure to identify any authority addressing the specific circumstances of this case prevents her from carrying the burden of showing "the inapplicability of the defense." *Morales*, 794 F.3d at 215; *MacDonald*, 745 F.3d at 15 ("Qualified immunity is meant to protect government officials where no ... red flags are flying"); *see also United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (warning that it is not enough for litigants to mention arguments "in the most skeletal way, leaving the court to do counsel's work").

Falto's failure to cite controlling or persuasive authority is particularly troublesome because at least one recent case dealing with similar circumstances suggests that only the mayor was tasked with providing due process. *See Walker v. Hitchcock Indep. Sch. Dist.*, 508 Fed.Appx. 314, 319 (5th Cir. 2013) (per curiam). The employee in that case, Doreatha Walker ("Walker"), served under a one-year probationary contract as the Director of the Kids First Head Start program for the Hitchcock Independent School District (the "School"). *Id.* at 315. As the director of the School's Head Start program, "it was her job to facilitate collegial relationships between staff and communication between the Superintendent, staff, parents, and the Head Start Policy Council." *Id.* As the Fifth Circuit noted, the "Policy Council ... makes employment recommendations about whether to terminate or renew the Director's contract to the district's Board of Trustees, which is the ultimate decision maker." *Id.* at 315 n.1.

After allegations of insubordination by Walker, the Policy Council "voted to recommend to the Board [of Trustees] that Walker's contract not be renewed." *Id.* at 316. And the School's "Superintendent made the same suggestion to the Board [of Trustees], which followed these recommendations." *Id.* Walker brought a § 1983 against the School, arguing that "she was denied due process because she was not allowed to attend the Policy Council meeting where the council decided whether to recommend that her contract be renewed." *Id.* at 319. She also claimed that the "Superintendent's separate recommendation, which he made to the Board of Trustees before the Policy Council made its recommendation, also violated her Fourteenth Amendment due process rights." *Id.*

The Board of Trustees—the School's ultimate decision maker—notified Walker of

its "proposed decision not to renew her contract and of her right to appeal," which she did. In considering the due process claim, the Fifth Circuit first noted that "[u]nder well-established federal law, the constitutional minimums for due process require that *the final decision maker* must hear and consider the employee's story before deciding whether to discharge the employee." *Id.* (emphasis added) (quoting *Coggin v. Longview Indep. Sch. Dist.*, 337 F.3d 459, 465 (5th Cir. 2003)); *accord Burgin*, 930 F.2d at 961. Under the circumstances above, and after assuming the employee had a constitutionally protected property interest in having her contract renewed, the Fifth Circuit held that Walker "received all the process she was due." 508 Fed.Appx. at 320.

As in *Walker*, the Policy Council (and the Board) recommended to the mayor that he not allow Falto to continue serving in the director position. *Id.* at 319–20. And though, unlike *Walker*, Falto never received a notice or hearing before she was removed from the director position, it is undisputed that the ultimate decision maker for the Municipality is the mayor—not the Board or Policy Council. Because the Fifth Circuit rejected Walker's contention that the Policy Council must afford the Head Start Director a modicum of due process before making recommendations to the ultimate decision maker, it was not clearly established in 2011 that the Board and Policy Council violated Falto's constitutionally protected interest by recommending her removal from the director position. *See Walker*, 508 Fed.Appx. at 320; *see also MacDonald*, 745 F.3d at 14–15 ("Even if the cases that run contrary to the plaintiff's position were wrongly decided—a matter on which we take no view—they serve to inject a substantial measure of doubt" on the question at issue, and that "substantial measure of doubt undermines" plaintiff's contention that qualified immunity is inapplicable). Thus, the members of the Board and Policy Council are entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the motion for qualified immunity is **GRANTED**. The members of the Head Start Program's governing board and policy council are entitled to qualified immunity, and any claims against these defendants in their personal capacities are **DISMISSED**.

**IT IS SO ORDERED.**